Gould, Executor of Hayes v. Womack and Wife.

---

GOULD, EX'R. AND THE HEIRS OF HAYES v. WOMACK AND WIFE.

Alabama<br>
2   83<br>
126  508

1. When two clauses of a deed are so inconsistent with, or repugnant to each other, that both cannot stand, the first will be enforced, and the latter ejected; but it is the duty of the Court to reconcile them, if possible.

2. At common law, the right to dower could not be waived or lost, by an agreement in lieu of dower, made previous to marriage—and as there has been no alteration of the common law, by statute, in this State, it follows, that an *ante-nuptial* agreement, entered into previous to marriage, will oppose no obstacle to the allotment of dower in the County Court.

3. Equity has jurisdiction in this State, to enforce the performance of contracts fairly entered into between parties, able to contract; but it is an appeal to the extraordinary power of the Court, and, therefore, a Court of Chancery will not lend its aid to enforce the specific performance of a contract, unless it is just and reasonable in all its parts, and founded on adequate consideration. The jurisdiction of the Court is not compulsory—the question is not what the Court must do, but what it may do, under the circumstances.

4. Notwithstanding there is no legal bar to dower, in this State, a Court of equity may enforce the specific performance of an *ante-nuptial* agreement, in lieu of dower, subject to the same rules by which it is governed in other cases of the specific performance of contracts.

5. Where an old man of fifty-six years of age, on the eve of marriage with a young woman, procured from her a relinquishment of dower in his estate, which was very large, on condition of his settling on her a life estate of small value, which she agreed to accept in lieu of dower, unless he should think proper to make an additional settlement on her at his death—before which event, which happened six years afterwards, he made his will, and gave her an annuity of fifteen hundred dollars a year during her life—gave her the use for life, of some land and slaves, and directed his executors to make annual provision for her support, up

on the acceptance of which, she was not to be entitled to the property secured to her by the ante-nuptial contract. Held—that this was not such an agreement as a Court of Chancery could be called on specifically to perform, on the ground that it was not just or reasonable—

First—Because the provision made by will, pursuant to the expectation created by the *ante-nuptial* contract, was a life estate only, which, considering the age of the dowress, was, of itself, a sufficient objection.

Second—Because, when compared with the legal dower, it was not an adequate provision, although ample for support.

Error to the Chancery Court at Eutaw.

THIS was a bill in Chancery, filed in the Chancery Court at Eutaw, by the plaintiffs in error, against the defendants.

The object of the bill was to prevent Mrs. Womack from asserting her right, at law, to dower, in the real estate, and to a distributive share of the personal property of George Hayes, her late husband, on the ground, that previous to the marriage, the parties had entered into a marriage contract, by which the intended wife relinquished all her right to dower in the real or personal estate of her intended husband, except what he might think proper to give her, in addition to the property secured to her by the *ante-nuptial* contract, which is as follows:

*Articles of Marriage Contract, entered into this day, between George Hayes and Anne M. Bevil, this* 24*th day of December,* 1832. Whereas, Anne M. Bevil relinquishes all claim or claims whatever, to any of the real or personal estate of the aforesaid George Hayes, so that the said George Hayes, can sell, or otherwise dispose of the same, without any relinquishment of dower, by the said Anne M. Bevil, nor can she have any claim or demand whatever, to any part of the said Hayes' estate, except what he may hereafter think proper to give her. But in case the said Anne M. Bevil should survive the said George Hayes, then, in that case, she is hereby secured the possession of ten negroes, worth, at this time, three hundred dollars each, and one section of land of medium quality; four hundred dollars worth of stock, to consist of horses, cattle and hogs, at a fair valuation, and corn, and other provisions, sufficient to make a crop with, so as not to exceed three hundred dollars in valuation;—and the above property is hereby secured to the said Anne M. Bevil, that it cannot be sold, or otherwise disposed of, by her or

any other person or persons whatsoever. Should she have a child or children at her decease, they are to have the entire property together, with its increase, free of any incumbrance. This instrument is to remain good in law and equity.

In witness whereof, we have hereunto set our hands, and seals, the day and date above written.

GEORGE HAYES, [Seal.]

ANNE M. BEVIL, [Seal.]

The parties lived together as man and wife, about six years, during which period, three children were born of the marriage.

Before his decease, Hayes executed his last will and testament, and made therein, the following provision for his wife :

" Unto my beloved wife, I give Hays' Mount, with a section of land around it. Also, fifteen hundred dollars, to be paid annually, in quarterly payments. Also, the following house servants, viz : Eliza, Sarah and Mary Bowden, the carriage horses, and Brister, the driver. Also, Dick, the gardener, and the household and kitchen furniture, all of which is given to her during her life.

For their maintenance, I authorize my executors to purchase annually, five hundred bushels of corn, six thousand pounds of fodder or oats, two thousand pounds of bacon, three barrels of flour, and ten gallons of wine. I also give my wife six milch cows and their calves.

I authorize my executors to build, or cause to be built, a comfortable dwelling house, twenty-five feet wide; and forty-four feet long, to be divided into equal parts, by a partition, one end of which is to be subdivided into two rooms, all of which is to be finished in a neat style, and the expenses to be defrayed out of the estate.

In consequence of my wife's acceptance of the provisions of this, I hereby declare the marriage contract, executed upon our marriage, null and void."

The widow dissented from the will in the County Court, and prayed her dower in the real, and her distributive share of the personal estate, to be allotted to her.

The heirs and executor of the deceased, contested the right of the widow to dower, and insisted on the *ante* nuptial con-

tract, as a bar to dower, but the County Court directed dower to be allowed. The bill prayed an injunction to the order of the County Court, and for the specific performance of the marriage contract.

The cause coming on to be heard, on bill, answer and proof, the Chancellor decreed that the bill be dismissed.

From this decree, the complainants prosecute this writ of error.

The record, in this case, is very voluminous, containing a great mass of testimony taken on both sides, to show the intention of the parties to the instrument, and for other purposes, which it is unnecessary to cite, as the opinion of the Court is founded exclusively on the law of the case.

HOPKINS & CAMPBELL, for plaintiff in error, cited—1 Madd. Ch. 355 ; Edws. Chan. Rep. 60 ; 4 Bro. C. C. 509 ; 1 Cox 20 ; 3 Conn. Rep. (N. S.) 81 ; 5th Vesey, jr. 545 ; 2 Page, 559 ; 1 Madd. Chan. 609 ; 2 Roper's Legacy, 378 ; 1 Eng. Ch. R. 402 ; 6 ibid. 60 ; 3 Hen. & Men. 400 ; 1 Vernon, 296 ; 1 Atkins, 447 ; 2 Vernon, 724 ; Sug. Ven. 119 ; 1 Bro. C. C. 92, 308 ; 2 ibid, 52, 219 ; 3 Cowen, 505 ; 3 Vesey, 153 ; 2 Atkins, 33, 254, 98 ; Gresley's Eq. Ev. 204; 1 Johns. C. Rep. 342, 428, 859; 6 ibid. 111 ; Fon. Eq. 169 ; Gressly Eq. Ev. 349.

THORNTON & MURPHY, contra, cited—Lamb on Dower, 538 ; Bac. Ab. Title Jointure ; Clancy on Rights, 205, 206, 207, 208, 223, 229 ; Reeves' Dom. Rel. 414 ; 2 Powell on Con. 5, 242 ; 6 John. Chan. R. 111 ; 3 Cowen, 445 ; New. on Con. 223, 4 ; 2 Atkins, 133 ; 1 Madd. 405 ; 2 Cox, 363 ; 1 Dess. 250 ; Gresley's Eq. Ev. 207 ; 2 H. & M. 618; 3 Rand. 537 ; 6 Mun. 439 ; 1 Con. 402 ; 6 Johns. 222 ; 2 Mumford, 187 ; 1 Vesey & Beame, 524.

ORMOND, J.—It is contended by the learned counsel for the defendants in error, that the ante-nuptial agreement itself, shows, that it was not contemplated, by the parties to it, that it should extinguish the claim to dower, but that its object was to enable the husband to alien his land during the coverture, and bar the right of the wife to dower, in the land thus sold, without her consent and relinquishment as required by the statute.

Gould, Executor of Hayes v. Womack and Wife.

It must be confessed, that the instrument is exceedingly in-artificial, and that some difficulty arises in expounding it. It is styled, " articles of marriage contract," and stipulates, that " whereas, Anne M. Bevil, relinquishes all claim whatever, to any of the real and personal estate of the aforesaid George Hayes, so that the said George Hayes can *sell or dispose of the same, without* any relinquishment of dower by the said Anne M. Bevil. If the instrument had stopped here, it is very clear, that it could not be inferred to have been the intention of the parties, to bar the right of the widow to dower, after the death of the husband, but it proceeds in the same sentence to pro-vide, " nor can she have any claim or demand whatever, to any part of the said Hayes' estate, except what he may think proper to give her hereafter ; but, in case the said Anne M. Bevil should survive the said George Hayes, then, in that case, she is hereby secured the possession of ten negroes," &c.

It is an established rule of construction, that if two clauses of a deed are so repugnant to each other, that they cannot be reconciled, or stand together, that the first must be adopted, and the latter rejected, [Shep. Touch. 88.] The effect ascribed to the relinquishment, by the first clause of the instrument, is that the husband would be thereby enabled to sell and convey his land, during the coverture, without the necessity of obtain-ing his wife's relinquishment of dower. Now the effect, here supposed to be the result of the contemplated relinquishment, cannot be said to be repugnant to, or inconsistent with the succeeding part of the clause, which, according to its plain im-port, was intended to prevent the assertion of any right to dower, in lieu of which, the slaves and other property describ-ed, was secured to the wife, to which is added the expressive clause *"except what he may think proper to give her hereaf-·ter."* It is not inconsistent with, or repugnant to the latter be-cause it merely declares, what the law would declare, if the first part of the clause were entirely omitted. It can admit of no controversy, that, if it is conceded that the right to claim dower after the decease of her husband, was by that instru-ment relinquished, it must as an incident have rendered a re-linquishment of dower by the wife, on all sales of land made by the husband, during coverture unnecessary. It was then

entirely unnecessary, but not inconsistent with, or repugnant to, the latter part of the clause. Whether its tendency may not have been to mislead one of the parties, is not a question we are now to consider. Gathering, as we must do, the intention of the parties, from the paper itself, considered as a whole, whatever may have been the effect ascribed to it in the minds of the parties, we must say, that its legal effect is, that the parties intended it should bar the widow of her dower. At common law, by the marriage, the wife acquired a right to be endowed of one third part of her husband's lands. This right she could not alien or dispose of, in consequence of two maxims of the common law—First, that no right can be barred before it accrues. Second, that no right or title to an estate of freehold, can be barred by a collateral satisfaction. It is said, that one of the reasons, why estates were conveyed to feoffees to uses, was that a widow was not dowable of a *use*. It therefore became common, for the friends of the wife, to procure the husband to take an estate from his feoffees and to settle it to himself, and his wife, for their lives in joint tenancy, lest the wife should be unprovided for, at the death of the husband.

The statute of 27th, Henry 8, commonly called the statute of uses, declared that, all those who had the *use* of lands, should be deemed to have the legal seizin and possession, the effect of which would have been, that all women then married, would have been dowable in all lands held to the use of their husbands, and might also claim any estate settled on her in jointure. To prevent this result it was provided by the 10th chapter of that act, that a jointure possessing certain qualities required by the act should be a bar to her claim of dower.

This portion of the statute of uses, has never been incorporated into our statute law, and by consequence, the question in this State stands as it did at common law.

The counsel for the defendants in error, insist that the equitable jurisdiction of the English chancery, is founded on the statute of the 27th, Henry 8, and that it only acts by analogy to it. That in this State, where there can be no such thing as a legal bar to dower, equity can have no jurisdiction, further than to compel an election.

It is stated by a very respectable writer, Roper on Property, that the jurisdiction of Courts of equity, in these matters, existed before the passage of the 27th Henry, 8th, upon the principle of enforcing agreements entered into between individuals. Whether it be true, as stated by counsel, that no case can be found anterior to the passage of the statute of uses, in which the court exercised this power, it is certain, that the jurisdiction of the Court of Chancery to enforce contracts entered into previous to marriage, and to compel an execution in lieu of dower, has been long established.

It is a matter of some difficulty to trace, precisely, the grounds of the jurisdiction of the Court of Chancery in these cases. In many of them, the decision cannot be supported on any other grounds, than by analogy to the provisions of the statute of Henry 8th. As, for example, where effect is given to a provision made by the husband in lieu of dower, to which the intended wife is not a party, and where the intended wife was an infant, when the contract was entered into. [See Drury v. Drury, 1 Eden. 59, and Estcourt v. Estcourt, 1 Cox. 20.] In cases of this description, it is clear, that the jurisdiction of the Court, was founded on the statute, which permitted the wife to be barred of her dower at law, by a provision, made by the husband, before marriage, to which she was not a party; and even if she were an infant, the Court holding, that where the law had been substantially complied with, they would dispense with its forms; and thus a system grew up of equitable bars to dower. It appears however, that in many cases, this distinction was lost sight of, and that the Court acted in virtue of its power, to enforce the performance of contracts, without any regard to the legal rights of the widow. Thus in Caruthers v. Caruthers, 4 Bro. C. C. 500, the master of the Rolls, although he admits that an infant is not bound by an uncertain or precarious provision, says " I do not say that if she had been an adult, she might not have bound herself; she might have taken a provision out of the personal estate, or she might have taken even a chance in satisfaction for her dower, acting with her eyes open; but an infant is not bound by a precarious interest."

11

But in a recent case, this is denied to be law in a very able opinion of Sir Anthony Hart, the Irish Chancellor, who says "although Lord Redesdale in Birmingham v. Kirnan, 2 Schoales & Lefroy, is made to say that he knew no distinction between the right to dower, and other rights, the law has certainly seen and marked very clearly, such a distinction. I know no jurisdiction, which a court of equity has to say, you may do that, which the law says you shall not do. The law says the intended wife shall not by contract, bar her dower, except certain requisites are complied with. Equity may dispense with the form of these requisites, but not with the substantial matter, which they all tend to, that is a solid provision for the widow, such as was agreed on by the contracting parties. A court of equity deals with an equitable instrument, precisely as a Court of law would, with a legal one. It preserves the analogy, and by no means looks at this duty as an agreement independent of that analogy. I repeat, there is no equity to enforce this agreement, except as an adoption of an equitable provision in analogy to jointure under the statute; and this Court would abandon its best rule, if when the object of that statute, is clear to bar dower only on a provision being made certain, with certain forms, it went beyond this, that is to say, when it finds a contract, which purports to provide a certain maintenance, to do more than effectuate that arrangement, without regard to the appendages, if it attain the primary object; but always contemplating some provision, certain as a condition of its interference." Power v. Shiel. 1 Molloy, 296. [ The Chancellor held, that the marriage contract was no bar, as the fund provided by it was unproductive. ]

[ It appears therefore, that even in England at this day, the Courts of Chancery merely profess to give effect to marriage contracts, when the substantial requisites of the statute have been complied with—and its forms only are wanting. ] But it will not follow, that a Court of Chancery, even without the aid of such a statute, cannot enforce a specific performance of a contract of this description, by virtue of its general power over the subject. No reason is perceived, why this class of contracts should form an exception to the general rule, but many and cogent arguments may be adduced to the contrary.

In the case of ordinary contracts, the refusal of the Court to enforce a specific performance, merely deprives one of the parties of a bargain, and leaves them as they were before, and at liberty to seek redress at law, for any injury either may have sustained. But after marriage, the parties cannot be placed in the same condition, they formerly occupied. Nor could adequate redress be always had at law. It follows therefore, that equity has jurisdiction to enforce the specific performance of an *ante*-nuptial agreement, fairly entered into between parties able to contract, in the same manner, and subject to the same restrictions, as other cases of the specific performance of contracts.

The question then is, has the complainant made out such a case as will call into active exercise, the extraordinary power of this Court, to enforce a specific performance. The jurisdiction of the Court is not compulsory, but discretionary. The question is not, what the Court must do, but what it may do, under the circumstances, 12 Vesey, Jr. 331. So in the case of Seymour v .Delancey, 6 John's, C. 222, Chancellor Kent says, " It is a settled principle, that a specific performance of a contract of sale, is not a matter of course, but rests entirely in the discretion of the Court, upon a view of all the circumstances." The same effect, are the opinions of Lord Somers, Lord Macclesfield, and other eminent English chancellors.

The case just referred to, of Seymour v. Delancey, underwent an examination in the Court of Errors of New York, and the question, whether the Court had a discretion to order or refuse a specific performance of executory contracts, was considered by C. J. Savage, who examines at great length, and with much ability, the leading English and American cases on this subject, and thus sums up the result of his examination. "On the whole, therefore, I am of opinion, that on the question of decreeing specific performance of executory contracts, the Court of Chancery must exercise its discretion; not an arbitrary, but a sound judicial discretion. If the contract be free from objection, it is the duty of the Court to decree performance. But if there are circumstances of unfairness, though not amounting to fraud or oppression, or if the inadequacy of consideration, be so great, as to render the bargain hard and unconscionable

on either ground, the Court may refuse its aid, and leave the parties to contest their rights in a Court of law. 3 Cowen's Rep. 521.

In King and others v. Hamilton and others, 4 Peter's Rep. 328, the Court hold this language : "It is a settled principle therefore, to allow a defendant to a bill for a specific performance of a contract, to show that it is unreasonable or unconconscientious, or founded in fraud or mistake, or other circumstances, leading satisfactorily to the conclusion, that granting the prayer of the bill, would be inequitable and unjust."

Such is the doctrine, it may be added in the States of South Carolina, Virginia, and Connecticut, as shown by the authorities referred to by the counsel for the defendant, but to cite them all would swell this opinion beyond the limits I have assigned to it, and would be an unnecessary repitition. They may be all thus summoned up, and it accords with the opinion of this Court—that a Court of Equity will not lend its aid to enforce a specific performance of an executory contract, unless it is just, reasonable in all its parts, and founded on adequate consideration.

This is doubtless the general rule applicable to the class of contracts of which we have been speaking, when sought to be enforced in chancery—as to the particular kind of contracts now under discussion, it has already been shown, that in those countries where the widow is authorized to bar her right to dower at law, by an *ante-nuptial* contract, Courts of Chancery, which look at the substance of things, and disregard form, will decree a specific performance, in cases where the provision is inadequate, if it does not entirely fail, because such was the intention of the parties,—an intention which the law authorized to be carried into execution, which the parties intended to execute, and failed to accomplish, by the omission of some form. These cases therefore are in those courts excepted from at least one of the rules, which enter into the consideration of other contracts, coming under the same general head. In this particular class of cases, mere inadequacy of consideration, though such a prominent objection, in other cases of executory contracts sought to be enforced, is not of itself sufficient to prevent its execution by the Court. But even in these Courts,

where a case arises in which the party could not bind him or herself under the statute, the Courts apply the same rules which govern its action in ordinary cases. This principle is asserted by the Chancellor in the case of McCarter v. Teller and wife, 2 Paige, 511. 4 Bro. C. C. 513. 1 Maddox, Rep. 613.

The facts of this case, are that a man of large property, considerably advanced in life, being fifty-six years of age, on the eve of marriage with a young lady just arrived at the age of legal discretion, obtained from her the execution of the *ante*-nuptial agreement, now sought to be enforced, by which she relinquished all claims whatsover, to the real and personal estate of her intended husband, " except what he may think proper to give her hereafter ; but in case she survived him, she was to receive ten negroes, worth three hundred dollars each, one section of land, of medium quality, four hundred dollars worth of stock and corn, and other provisions, not to exceed three hundred dollars in value. This property she was to enjoy during her life, and at her decease, it was to go to her children. The parties lived together as man and wife, about six years, during which time, three children were born of the marriage, and the husband, being sick and about to die, made his last will and testament, by which he bequeathed to his wife a section of land, and fifteen hundred dollars per annum, during her natural life ; also, the use, during her life, of four slaves —the carriage and horses, and household and kitchen furniture —also, five hundred bushels of corn, two thousand pounds of bacon, six thousand pounds of fodder, three barrels of flour, and ten gallons of wine, which the executors of the will were directed to purchase annually, and six milch cows and calves. He also authorized his executors to build a comfortable house which he particularly describes, but does not say for whose use it is intended. The concluding clause of the will is, "In consideration of my wife's acceptance of the provisions of the will, I hereby declare the marriage contract, executed before my marriage, null and void." This last provision refers to an acknowledgement made by the wife, of the same date with the will, and is in these words: " Know all men by these presents, that I do hereby accept of the provisions of the last will

and testament of my husband, made and executed by him, this sixth day of July, 1838."

         Signed,          ANNE HAYS, [Seal.]

[ Considering, as we must do, the *ante-nuptial* agreement in this case, as a mere contract, entered into by parties able to contract, has it those qualities, which, under all the circumstances of the case, entitle the heirs to demand of this Court, its specific performance, against the legal claim of the widow to dower? Is it fair, just and equal in all its parts, and founded upon adequate consideration? ] If, upon examination, it be found wanting in any of these qualities, this Court cannot be called on to execute it, but will leave the parties where the law has placed them.

Dower is a right highly favored at the common law, and justly so, to guard the weaker sex from imposition, to provide a fund for their maintenance, when they can no longer lean on the protecting arm which had sustained and supported them. It is a principle which ought to be cherished. To ascertain then, what is just, fair and reasonable, as a provision, we must enquire what the law would allow the wife in this case, and see by the comparison of that, with the fund provided by the *ante-nuptial* contract, whether it is a proper one, under all the circumstances of the case. For, if it can be shewn that it is grossly inadequate, when contrasted with the husband's estate, making allowance for the claims which his children have on his bounty, this Court cannot, on the principles which govern it in decreeing a specific performance, be called on to execute the contract.

The estate of the deceased is estimated, in some part of the case, at eight hundred thousand dollars. This is, doubtless, an exaggerated estimate. He possessed, however, one hundred and eighty slaves, and an immense landed estate, the great bulk of his fortune being in land. Of this large estate, the widow is, by law, entitled to the absolute property in one-fourth part of the slaves, and other personal property, and to one-third part of the lands, during her life. The provision then, made for her by the ante-nuptial agreement, when contrasted with her legal rights, is so utterly disproportionate, as to be well considered, as grossly inadequate, unreasonable and unjust.

Gould, Executor of Hayes v. Womack and Wife.

And we know of no principle, which would authorize this Court to say to her, that she shall not avail herself of that provision which the law has secured to her, and that she shall take the mere pittance secured by the *ante-nuptial* agreement.

It is perfectly well settled, that a Court of Chancery will not decree a specific performance, where there is a great inadequacy of value, on the ground, that they will not enforce hard or unconscionable bargains.   This is an ancient, and well established doctrine of the Court of Chancery, as is shewn with great clearness and precision, by Chancellor Kent, in the case already referred to, of Seymour v. Delancey, 6 Johns. C. 222, in which he reviews all the English authorities.   The same case was afterwards carried to the Court of Errors, and again underwent a thorough examination, and the principle was established beyond controversy.   [See also, 1 Maddox C. Rep. 9; 2 Atkins, 385; 10 Vesey, jr. 292.]   So far, therefore, as the ante-nuptial contract can affect this question, it is clear, beyond all doubt, that, according to the well established principles by which Courts of Chancery are governed in cases like the present, it should not interfere.

It appears, however, that the husband did not propose to his intended wife, to receive the small amount of property mentioned in the marriage contract, in lieu of dower in his large estate, but held out the idea that he would make a further provision for her.   By the terms of the *ante nuptial agreement*, the intended wife, in consideration of the slaves and other property, agreed to be secured to her, relinquishes all right to his estate, " *except what he may think proper to give her hereafter.*"   It is, therefore, proper to consider whether the provision made in the will, pursuant to the expectation thus created, is fair and reasonable.   The provision thus made, consists of an annuity of fifteen hundred dollars a year, the use of five slaves, besides an annual provision which the executors are required to procure for the support of her family, which appears to be ample for that purpose.   The executors were also required to build a house of a particular description, which it may be conjectured was for the use of the wife, but it is not so stated in the will.   It would be going great length, in the construction

of the will, to say that such was the intention. It belongs to the class of patent ambiguities, and therefore not open to proof. He also gave her the use, during her life, of a section of land.

As the provision made in the will is ample for the support of the wife, it becomes necessary to settle the meaning of the term *adequate,* when applied to such a case as the present. It is very evident that, when this term is applied to a provision in lieu of dower, it must be compared with, and have reference to, the value of the legal dower, or it is without any definite meaning. One hundred dollars might be more than the value of the legal dower, and yet be inadequate for support. So on the other hand, ten thousand dollars might be ample for support, and yet greatly inferior in value to the legal dower. It follows, therefore, that the only test is to institute a comparison between the provision made in the will, and the actual value of her dower at law; and it is by precisely the same process that a knowledge of the fact of inadequacy in any contract, can be ascertained.

The value of the provision made for the wife, by the will, is difficult of ascertainment, from its being a mere life estate.— It is not, probably, more than equal in value to one third part of what she would be entitled to by law; and the disproportion may be, and probably is, much greater than here supposed.— Without going further into particulars, it is sufficient to say, that the provision made by the will, is grossly disproportionate to the value of the legal dower.

The mere fact that the provision is an annuity, would, of itself, be sufficient to prevent this Court from compelling the widow to accept it in lieu of dower. The law gives her an absolute estate in her portion of the slaves and other personal property of the husband, and it would be doing her great injustice, to require her to accept, in lieu of it, a mere annuity.— In the State of New York, where the 10 c. of the 27th Henry 8, was enacted verbatim, and where, by consequence, a jointure properly made, previous to marriage, was a legal bar, even in the case of an infant, yet, if it was necessary to resort to a Court of Chancery, the Court would not enforce it " unless the provision was as certain and as beneficial to the infant, as that required in a legal jointure to create a bar. It must be a reason-

able and competent livelihood for the wife, in reference to the circumstances and situation in life of the parties, the value of the husband's estate, and the extent of the wife's portion, received with her on the marriage." [McCarter v. Teller, 2 Page Chan. Rep. 511.] And in that case, where an annuity was set up as an equitable bar to dower, it was considered a fatal objection to it that it was limited to the widowhood of the wife. In that case, as in this, the annuity was by will, and intended to be in lieu of property, secured by articles previous to marriage. In Williams v. Chitty, 3 Vesey Jr. 545, Lord Thurlow held that a settlement to bind an infant, must be fair and reasonable; and in Caruthers v. Caruthers, 4 Bro. C. C. 513, the Master of the Rolls, after an elaborate judgment. expressed the same opinion. The result of these cases is, that even where dower may be barred at law, when in the case of infants, the Court of Chancery is called on to enforce a marriage contract, it will not interfere, unless the contract is just, fair and reasonable, on the ground that they are not bound at law.

This being the case, where dower may be barred at law, by an *ante nuptial* contract, and where, by analogy to the statute, a Court of Chancery, disregarding form, and looking only to substance, will enforce any contract which an adult female may make prior to marriage, with the intention of barring her dower, no matter how inferior in value to her dower; yet, in this State, where there can be no legal bar to dower, and where an *ante nuptial* agreement can only be enforced in Chancery, as any other contract which the Court may be called on specifically to perform, its aid cannot be had unless the contract is fair, just and reasonable, in all its parts, even if there be neither fraud nor misrepresentation, mistake or surprize, or if the inadequacy be not so great as to be of itself evidence of fraud.

Indeed, it may well be doubted, whether this is not carrying the jurisdiction of the Court to the very verge of propriety, as it is, in effect, saying to a party, you shall do that which the law says shall not be done, and can only be defended on the ground of the peculiarity of the marriage relation, the most important of all contracts, and because the parties cannot be placed in *statu quo*.

It appears, therefore, from the examination here made, that the property secured by the *ante nuptial* contract is grossly inadequate, when compared with the value of the dower; that the provision made by the will, though less objectionable on this score, is still too disproportionate to the value of the dower to entitle it to the aid of this Court. The interpretation of that part of the *ante nuptial* contract which contemplated a further provision by the husband, must be a fair and reasonable provision, in reference to his circumstances and situation in life, and the value of his estate; and as the provision made does not answer this description, the widow cannot be compelled to receive it in lieu of dower.

We do not wish to be understood as saying that a provision to bar dower, where there is neither mistake, surprize or fraud, must be as valuable as the dower; but that it must not be greatly deficient in value; nor would this Court be disposed to institute a nice comparison, especially in a case where, though not fully equal in value to the dower, the amount secured in lieu of it was a competent livelihood. But, in this case, not only is the deficiency in actual value very great, but the character of the estate, a mere life interest, considering the age of the doweress, would, of itself, be sufficient to cause its rejection.

We have avoided the consideration of many interesting questions, argued with great ingenuity and learning, on both sides, and presented on the record. As to the effect of the answer in relation to the intention of the parties to the instrument —the effect of the admission of the husband after the marriage —and of the right to contradict or explain the instrument without alledging fraud—not merely because those questions are, some of them, difficult and embarrassing, but principally because we desired to present this interesting and delicate question, in a plain and intelligible manner, unclogged with the consideration of circumstances which might, if they had been discussed, have been hereafter supposed to enter into the consideration of the question, and thus impair its value as a judicial precedent.

It was insisted in argument, by the counsel for the plaintiff in error, that the defendants in error were concluded by an ad-

Gould, Executor of Hayes v. Womack and Wife.

mission, made on the application for the allotment of dower, in the County Court, from now disputing the validity and efficacy of the *ante nuptial* agreement, as an equitable bar to dower.

The supposed admission consists in the demurrer of the widow, in the County Court, to the *ante nuptial* agreement, which was set up by the executor and heirs of the deceased, as a bar to the allotment of dower in the County Court. When a fact is pleaded in bar of a right asserted by suit, if the fact exists, there is nothing left to the party against whom it is offered as a bar, but to question its legal validity as a bar. It is certainly true, that an admission made by either of the parties, in the pleadings, cannot be contradicted by proof. But no admission is made here, but that the fact stated is true. Its validity as a bar, in the County Court is denied—is that equivalent to an admission that it would be operative in any other Court? If so, a plaintiff would be placed in the singular predicament that, where a fact which he cannot deny is pleaded as a bar, as he cannot take issue in fact; so neither can he defend himself by an issue in law, without admitting the legal validity of such a fact, in some suit to be afterwards instituted, in some other tribunal. The supposition that a denial that a fact pleaded in bar of one suit, is valid, is an admission of its validity in another suit, does not comport very well with the severe logic which is supposed to pervade the science of pleading. The *ante nuptial* agreement could not, under any circumstances, have been a bar to the action of the County Court, which must proceed according to the rules of law, and has no equitable jurisdiction; and this was all which was asserted by the demurrer to the plea of the heirs, in the County Court.

It remains but to add, that the decree of the Chancellor is affirmed.