CATHARINE CURRY, APPELLANT, v. ROBERT CURRY, RESPONDENT.

SAME v. JOHN CURRY, RESPONDENT.

*Ante-nuptial agreement — release of dower by wife — consideration required to sustain it — chap. 375 of 1849.*

An ante-nuptial contract of a woman that she will not claim her dower in the event of her intended marriage is contrary to public policy, and unless founded upon the consideration of some provision for her in lieu of dower, will be ineffectual both at law and in equity.

This rule is not changed by chapter 375 of 1849, providing that all contracts made between persons in contemplation of marriage, shall remain in full force after such marriage takes place.

Such intended marriage, even though solemnized in reliance upon the agreement, does not of itself furnish a sufficient consideration to support the same.

*Quære,* as to the power of the court to inquire into the adequacy of the provision made for the wife, and as to the extent to which such inquiry can be carried.

APPEALS from judgments in favor of the defendant in the above entitled actions entered upon the reports of a referee.

*James B. Perkins,* for the appellant.

*J. A. Stull,* for the respondent. The agreement was founded upon, and recited a sufficient consideration, viz. : an intended marriage between the parties, and one dollar. The marriage was a valid and sufficient consideration for the contract. (2 Kent's Com. [12th ed.], 172, 173; 1 Bishop on Law of Married Woman, §§ 26, 27, 28, 775, 776, and cases cited; Tyler on Inf. and Cov., 454, § 324; *Strong* v. *Arden,* 1 Johns. Ch., 271; 2 Story's Eq. Jur., § 986.) The fairness and reasonableness of such a contract now furnishes a test by which its validity is sustained in a court of equity. (1 Bishop on Law of Married Women, § 424.) And such an agreement will also be sustained in a court of law. (1 Bishop on Law of Married Women, §§ 424, 427, and cases cited; 1 Bishop on Mar. and Div., §§ 14, 15; *Miller* v. *Goodwin,* 8 Gray, 542; *Stilley* v. *Folyer,* 14 Ohio R., 610; *Selleck* v. *Selleck,* 8 Cowan, 79, 85;

*Charles* v. *Charles*, 8 Gratt., 486; *Neves* v. *Scott*, 9 How. [U. S.], 196; *Withers* v. *Weaver*, 10 Barr., 391; *Vance* v. *Vance*, 21 Me., 364; Scribner on Dower, 388.)

TALCOTT, J.:

These cases are appeals from judgments rendered for the defendants on the reports of a referee.

The action in each case is ejectment for dower. The answers are the same in each case, the evidence was the same, and the referee's report the same. The two cases were argued as one.

The plaintiff, as the widow of Robert J. Curry, sues in each case to recover her dower in a farm, situate in Monroe county. The two farms were, by the deceased Robert J. Curry, devised to his two sons, one to Robert and the other to John. The referee finds in each case that Robert J. Curry was seized of the premises at his death, but has reported in favor of the defendant in each case, giving effect to an ante-nuptial agreement between the plaintiff and Robert J. Curry, her deceased husband, as an equitable bar to her claim of dower in the two farms. The ante-nuptial agreement relied on, was duly executed and acknowledged between the parties on the day of their marriage, in July, 1864. The agreement is short and in substance recites that the plaintiff (then Catharine Barry), in consideration of a marriage about to be had and solemnized between her and the said Robert J. Curry, and in consideration of the sum of one dollar to her in hand paid, "doth hereby covenant and agree with the said Robert J. Curry that the said Robert J. Curry, his heirs and assigns, shall and will forever hereafter stand seized of and sole owner to the said two farms, to the use of said Robert J. Curry his heirs and assigns, free from all claims of dower or interest therein of the said Catharine, both before and after the decease of the said Robert J. Curry." And it is further stated in the said agreement, that it was thereby intended that the said agreement should operate as a release and discharge of all claims for dower which the said Catharine might acquire by virtue of her marriage with the said Robert J., and that the said two farms should be, and the same were thereby discharged of and freed from all claims which the said Catharine might have or acquire by such marriage. And, it was further provided, that the said agreement was not to affect or

impair the claim of the said Catharine by virtue of said marriage in any other real or personal estate of the said Robert J.

The instrument was executed under seal by both parties, Catharine Barry and Robert J. Curry, and was duly acknowledged by them. The marriage referred to in the agreement was duly solemnized within about one hour after the execution of the agreement, and as the referee finds, "in reliance upon it, and in the belief that by its provisions the two parcels of land there described were free and clear from all claim for dower or other interest therein, to which the plaintiff would otherwise be entitled by said marriage."

There was no actual consideration paid or given to the plaintiff as the consideration for signing the said agreement.

The parties lived together in wedlock until in the month of January, 1875, when Robert J. Curry died seized of the two farms in question, and of several other parcels of real estate, and the owner of a considerable personal property. An ante-nuptial contract of a female that she will not claim her dower in the event of her intended marriage, is contrary to public policy, and unless founded upon the consideration of some provision for her in lieu of dower, will be ineffectual both at law and in equity. (4 Kent Com., 56 [Ed. note, B]); *Power* v. *Shiel*, 1 Mallory, 296; *Miller* v. *Folger*, 14 Ohio, 610; *Gould* v. *Vomack*, 2 Ala., 83.)

At the common law, dower could be barred only by settling for the benefit of the wife, some adequate provision for her during widowhood; whether the court could inquire into the adequacy of the provision, and to what extent, has been the subject of some difference of opinion. In the case of *Andrews* v. *Andrews* (8 Conn., 85), cited by the learned referee, it was held that any provision which an adult before marriage agrees to accept in lieu of dower, will be a good equitable jointure. In that case, the provision was that the husband would forego his marital rights in reference to the property of the wife, both real and personal, said by the court to have been large, and also, to a certain extent, in the proceeds of her labor; and, as said by the court, except for the agreement, the husband would, by virtue of the marriage, have been entitled to the personal property and the use of the real estate during their joint lives; and though marriage is said in the opinion to be a valuable consideration, it is not intimated that the marriage

alone would be a sufficient consideration to sustain such a contract. The contract was upheld on the ground that the intended husband relinquished valuable marital rights, and had performed the agreement on his part. (See *McCartee* v. *Teller*, 2 Paige, 511.) But in no case to which we have been referred has it been held ·that an agreement made before marriage, and without any consideration except the intended marriage, not to claim dower to which the female would otherwise be entitled, in consequence of the marriage, can be upheld or would be enforced in equity.

The legislation on this subject seems to throw some light upon the views which the legislature has taken in regard to the validity and effect of such a contract.

The Revised Statutes provide (1 R. S., 741, § 9), that " whenever an estate in lands shall be conveyed to a person and his intended wife, or to such intended wife alone, or to any person in trust for such person and his intended wife, or in trust for such wife alone, for the purpose of creating a jointure for such intended wife, and with her assent, such jointure shall be a bar to any right or claim of dower of such wife, in any lands of the husband." And again, in section 11, that "any pecuniary provision that shall be made for the benefit of an intended wife, and in lieu of dower, shall, if assented to by such intended wife, as above provided, be a bar to any right or claim of dower of such wife in all the lands of her husband."

It is manifest from these statutes that the legislature did not intend that any contract made by an intended wife, or with her assent, which did not contain some provision for her by the settlement of lands or by a pecuniary provision, should operate to bar dower.

It is not necessary in this case to decide whether, under the statute referred to, the court can inquire into the adequacy of the provision, or whether it is to be confined to a provision taking effect for the benefit of the wife on the death of the husband, or whether such provision as prescribed by the statute being made, it constitutes a legal or only an equitable bar. It is sufficient to say that the legislature understood and recognized the rule of both law and equity, that an ante-nuptial agreement not founded on any consideration save the contemplated marriage would be ineffectual to bar the dower of the female contemplating marriage. In 1849, the legisla-

ture enacted as follows: "All contracts made between persons in contemplation of marriage shall remain in full force after such marriage takes place." (Laws of 1849, chap. 375, § 3.)

. This provision of the statute was not intended to change the law requiring a consideration for a contract not to claim dower, but apparently only to change that rule of law which avoided contracts between parties intending marriage by the marriage itself, so that now an ante-nuptial agreement solely between the parties contemplating marriage could be enforced after and notwithstanding the marriage. Such construction has recently been given to this section by this General Term in *Brown* v. *Conger, Executor, etc.*, where it was held that this section did not repeal or alter that portion of the statute of frauds which requires such contracts to be in writing.

The learned referee finds a consideration for the agreement in the marriage itself. It is true that marriage itself is a valuable and sufficient consideration to sustain many contracts, and may in part sustain an ante-nuptial contract to forego dower, but, as before said, it seems to be settled that it is not of itself a sufficient consideration upon which to base an agreement to relinquish one of the most important rights which the law attaches to the marriage itself. The referee also finds a consideration in what he considers the implied covenant of the decedent to do nothing to affect or impair the claim of the plaintiff to dower in all his real estate but the excepted parcels.

The provision alluded to is the closing one, that this "agreement however not to affect the claim of said Catharine by virtue of such marriage in any other real or personal estate of the said Robert J." This provision, it seems to us, is mere surplusage. The agreement could not, without it, and did not purport to, affect her claim to any other property. It would be a novel rule that an agreement requiring a consideration for its support is to be maintained upon the ground that because it was not to affect any other rights than those specified in it, that this circumstance of itself, whether resulting from the construction of the contract, or specially provided for in it, furnished a sufficient consideration. We do not see, although the instrument was executed by Curry, how any covenant could be implied against him, extending beyond the provision itself, to wit, that the *agreement* should not operate beyond its terms, and such a covenant, even if expressed, would be of no effect.

It is urged that modern legislation, by which many new powers in respect to property, its acquisition and holding by a married woman free from the control of the husband, has removed many of the reasons why dower was so much favored, and that the rules of law, long established for the protection of dower rights, might well be abrogated, or at least much ameliorated. Such considerations are very proper if addressed to the legislature, but courts can scarcely venture in advance of the legislature to undertake to change the settled law upon the subject. What was formerly a good consideration to uphold an ante-nuptial agreement not to claim dower, is now secured by law to married women, and therefore the rule requiring a consideration other than the intended marriage to support such a contract, is no longer just or equitable. So long as the right of dower is maintained, the courts have no power to alter the conditions on which only it can be barred, till the legislature speaks.

The advantages to be obtained by the marriage, as contrasted with the situation of the plaintiff when the ante-nuptial agreement was made, though as suggested by the referee, such, as that "a judicious friend in view of all circumstances would have advised," the making of the agreement by her, would probably tend greatly to show that the agreement could not be held void simply as unfair, and the result of fraud or imposition, but they cannot have the effect of abrogating the rule that such an agreement must be founded upon at least some valid consideration besides the marriage and the legal claims of the wife growing out of it. It appears that the husband, by his last will, made a certain provision for the plaintiff in lieu of dower, and it was claimed on the trial that the plaintiff had elected to accept such provisions of the will in lieu of her dower. The referee, however, has found as a matter of fact, that the evidence on that subject was insufficient to sustain the allegation that she had made any such election. We are now asked to sustain the report of the referee, upon the ground that his finding of the fact that the evidence was insufficient to show such an election as would bar the plaintiff, was erroneous. We think this cannot justly be done. The defendant has not appealed from the decision of the referee. The plaintiff was not called upon to insert in the case the evidence bearing upon the question, and we cannot be sure that the case, as presented, sets forth all the evidence which was

given, or which might have been given on the subject. Being of the opinion that the learned referee has fallen into an error as to the validity and effect of the ante-nuptial agreement, on which alone he has based his decision that the plaintiff's claim for dower is barred, we are compelled to reverse the judgement.

Judgment reversed and new trial ordered, costs to abide the event.

Present — MULLIN, P. J., TALCOTT and SMITH, JJ.

Judgment reversed in each case and new trial ordered, costs to abide event