# SIMS *vs.* McEWEN'S ADM'R.

[BILL IN EQUITY FOR SPECIFIC PERFORMANCE OF PAROL CONTRACT.]

1. *Vagueness and uncertainty in contract alleged.*—Where the alleged contract was, "that upon the purchase by said defendant of said lot and improvements, he and complainant were to have and own jointly all the estate purchased as aforesaid—that is to say, said defendant was to own one-half of said property, and complainant one-half of said property ; complainant to superintend the erection of certain buildings of brick, as mentioned in the deed of mortgage on said lots, to repay to said defendant the moneys by him paid out (and the interest thereon) on account of said purchase, and on account of said buildings, and for all provisions, horses, wagons, and mules furnished by him for the benefit of said firm ; and complainant to take charge of the same as a hotel, and have one-half the profits thereof, and one-half of the rents thereof, and the said proceeds to be applied to the payment of said debt," &c.—the court inclined to the opinion, that a specific performance might be refused, on the ground that the agreement as alleged was too vague and uncertain ; but the bill was dismissed on other grounds.

2. *Inability of complainant, by reason of insolvency, to perform his part of contract.*—In the exercise of a sound discretion, equity will refuse to enforce the specific execution of a contract in favor of one party, when it is uncertain whether he can fulfil the stipulations of the contract on his own part ; as where (in this case) complainant's insolvency rendered it doubtful whether he would be able to pay his share of the purchase money yet due, or to repay the advances made by defendant.

3. *Dissolution of partnership by death.*—The death of a partner dissolves the partnership, if there is no stipulation for its further continuance.

4. *Variance between allegations and proof.*—When the contract set up in the answer and proved is materially different from that alleged in the bill, although the defendant may have a specific performance without resorting to a cross bill, yet the same rule applies to the plaintiff as in other cases—he must prove the case made by his bill.

5. *Matters dehors the contract.*—If a party seeks the specific execution of a contract in equity, he cannot have relief for matters which are not embraced in the contract.

6. *Compensation incidental to relief in absence of special equity.*—If the plaintiff does not make out a case which entitles him to a decree for specific performance, compensation for damages resulting from a breach of the contract, or for services performed under it for which he may recover at law, will not be decreed him, unless some special equity intervenes.

7. *Services performed under void (because parol) contract recoverable at law.*—Although an action at law cannot be maintained for the breach of a contract which is void under the statute of frauds because not reduced to writing, yet a recovery at law may be had for services performed under it.

APPEAL from the Chancery Court of Dallas.
Heard before the Hon. JAMES B. CLARK.

THIS bill was filed by John C. Sims against the adminis-
trator of James A. McEwen, deceased, to enforce the specific
execution of a parol contract. Its allegations, in substance,
are as follows : That said McEwen purchased from one Jack-
son, on the 29th November, 1852, a certain lot in the town
of Cahaba, with the improvements thereon, at the price of
$7,000, and received a deed for the same from said Jackson ;
that the purchase money was not paid at the time, but it was
secured by five promissory notes, each for $1,400, payable on
the 1st day of January, 1853, 1854, 1855, 1856, and 1857,
and the payment of the notes was also secured by mort-
gage on the house and lot ; that the premises thus purchased,
by verbal contract between complainant and said McEwen,
were to be held and owned by them jointly ; that, by the
terms of this agreement, complainant was to superintend the
erection of certain brick buildings on the lots, to repay to
McEwen the moneys advanced by him on the purchase and
other expenses incident to it, to take charge of the house as a
hotel, and to have one-half of the rents and profits thereof,
which were to be applied to the payment of said debt.

The bill further alleges, that under said verbal contract,
complainant entered into the possession of said premises, with
said McEwen, on the 30th day of November, 1852, and has
since erected a large brick building, which cost (and is worth)
about $8,000, and the annual rent of which is worth at least
$2,200 ; that he has also expended large sums of money in
repairing the old buildings and out-houses ; that on the 1st
day of January, 1853, complainant and said McEwen opened
a hotel in the building, known as "Dallas Hall", and con-
tinued the business until the death of said McEwen, which
occurred in October of that year ; that complainant and the
family of said McEwen are still in the possession of the house
and premises, but the administrator of said decedent is claim-
ing the exclusive possession and control thereof, and threat-
ens to drive complainant out of possession.

The bill also alleges, that during the last illness of said
McEwen, and at his request, complainant " made a written

memorandum of the contract between them, (a copy of which is hereto annexed, marked 'Exhibit C',) which paper was read over to the said McEwen, and was by him acknowledged to be correct; and the said McEwen proposed to sign the said writing as the contract, but complainant objected, because the memorandum was in his handwriting, and was not drawn with the accuracy and perspicuity that was desirable. Said McEwen then proposed to have it drawn in proper form, but stated that he was willing to sign it as written, and said that it was correct."

This memorandum, as exhibited with the bill, is as follows :

"Be it known, that I, James A. McEwen, have bought two lots in the town of Cahaba, known as lots No. —. I am now building a new hotel on the lots, with four tenements below stairs for rent, and John M. Sims is engaged as a mechanic and superintendent of the same ; and that I propose to make him interested in said lots and building, after all moneys that I have paid out of my own effects are repaid to me, and the property paid for, according to the lettering of the contract and conditions of the mortgage now on record in the clerk's office in probate. Whereas I have, out of my own moneys, paid $—— for the building of the hotel and other tenements ; and when the one-half the moneys that I have so paid out are replaced by said John M. Sims, with interest, then the said Sims is to be equal(ly) interested in the foregoing property. All moneys that may be derived from the hotel, or from the rents of the house, will be applied to the payment of the property, or for the hire of the hands or materials. All such money so obtained is to be considered as the money of the firm, and each one equally interested ; but for all moneys that James A. McEwen has furnished, either directly or indirectly, in money, or horses, wagons, mules, or provisions, the same is to be counted as cash to the concern ; and the party of the second part, before he can draw, or claim to be equal in the foregoing premises, all money, with interest, must be paid to the party of the first part. Be it further known, that to entitle the said Sims, the party of the second part, after the buildings are completed, that he, on his part, take charge of the hotel as superintendent, and bind himself to discharge the duties of a superintender as tavern-keeper ; he is to at-

Sims v. McEwen's Adm'r.

tend to the servants, keep the keys, deliver all provisions out of the smoke-house, (or other places that may be kept for deposit and under lock and key)—in other words, he binds himself to do all that lay in his power so to do, to promote the interest of the above concern. And that the party of the first part is to receive all money that may be made by the united efforts of both parties, first and second; but the party of the first part promises to pay over all moneys that is made by the concern, to the extinguishment of the debts of the concern."

The prayer of the bill is for a specific performance of the alleged contract, for an injunction against the administrator, and for general relief.

The answer of the defendant denies the existence of the alleged contract, or of any other contract of partnership between the complainant and said McEwen; denies also that complainant ever entered into possession of the premises under any contract, or erected valuable improvements thereon as charged; and alleges that complainant was the son-in-law of McEwen, that for this reason he was allowed to reside at the hotel with his family, that he has been fully paid for all the work done by him on the house for McEwen, and that he is insolvent. He also pleads the statute of frauds as a bar, and demurs to the bill for the want of equity.

On final hearing, the chancellor dismissed the bill, but without prejudice to complainant's right to seek compensation for his labor and services in the erection and repairing of the buildings; refusing the specific execution of the agreement on the ground of uncertainty, want of mutuality, and variance between the allegations and proof. His decree is now assigned for error.

Wm. M. MURPHY, for the appellant:

1. The admission into possession, and the erection of valuable improvements with the knowledge and consent of McEwen, constitute sufficient ground for a specific performance of the contract.—Byrd v. Odem, 9 Ala. 756; Mortimer v. Orchard, 2 Vesey's R. 243; White & Tudor's Lead. Ca. in Eq. vol. 1, p. 564, and authorities cited; Morphett v. Jones, 1 Swanst. 181; Attorney General v. Day, 1 Vesey's (Sr.) R. 221.

2. The doctrine with regard to mutuality of contracts has no application to such a case.—Sutherland v. Briggs, 1 Hare's (Eng. Ch.) R. 26; 1 Swanst. 172 ; 5 My. & Cr. 167.

3. The contract alleged is sufficiently definite and certain, and there is no such variance between the allegations and proof as justifies the refusal of a specific execution of the contract.—Mortimer v. Orchard, *supra;* 1 My. & Cr. 177; 6 Ves. 470; Rhodes v. Rhodes, 3 Sandf. 279; Ellis v. Burden, 1 Ala. 458 ; Casey v. Holmes, Bott & Earle, 10 *ib.* 786 ; 2 Edw. 50 ; 14 Johns. 15 ; 7 Watts & Serg. 172 ; 10 Paige's R. 527–35.

4. But if the contract was too uncertain for a specific performance to be decreed, complainant should have had a decree for compensation in damages to the value of the improvements erected on the land.—Mialhi v. Lassabe, 4 Ala. 713; Phillips v. Thompson, 1 Johns. Ch. 150; Anthony v. Leftwich, 3 Rand. 238; Payne v. Graves, 5 Leigh's R. 561.

5. When a partnership, or an agreement in the nature of a partnership, exists between two persons, and land is required by the partnership as a substratum, the land is in the nature of stock in trade ; and the partnership being proved as an independent fact, the court, without regarding the statute of frauds, will inquire of what the stock consisted, and the survivor will be entitled to it.—Dale v. Hamilton, 1 Hare's (Eng. Ch.) R. 384 ; 2 Phil. 266; Elliott v. Brown, 3 Swanst. 489 ; Forster v. Hale, 3 Ves. 696.

6. An agreement to sign a written instrument, which the party was prevented from doing by death, has been held sufficient to entitle the other party to a specific performance.— 1 Freeman's Ch. R. 65–69.

JAMES H. CAMPBELL, *contra,* made the following points :

1. The memorandum attached as an exhibit to the bill is not a contract, but a mere proposition, which, as it was not accepted at the time, binds neither party. There is no mutuality in it.—Story on Contracts, § 380 ; Mactier v. Frith, 6 Wend. 104 ; Tucker v. Woods, 12 Johns. 170; Payne v. Cave, 2 Durn. & E. 75; Gould v. Womack, 2 Ala. 83; Ellis v. Burden, 1 *ib.* 458; 4 Stew. & P. 264 ; Casey v. Holmes, Bott & Earle, 10 *ib.* 777.

2. The contract alleged is so indefinite and uncertain in its provisions, that a specific performance ought to be refused on that ground.—Gould v. Womack, *supra;* Ellis v. Burden, *supra;* Casey v. Holmes, Bott & Earle, *supra;* Boucher v. Buskirk, 2 A. K. Marsh. 346; Goodwin v. Lyon, 4 Port. 297; Blevins v. Bank of Decatur, 6 Ala. 377; Forward v. Armistead, 12 *ib.* 124; Caller v. Vivian, 8 *ib.* 903; 18 *ib.* 353.

3. The evidence is not sufficiently clear and definite to authorize a decree for specific performance.—Aday v. Echols, 18 Ala. 353; Mauldin, Montague & Co. v. Armistead, *ib.* 500; 3 Sumn. 438; 2 Story's Equity, § 764; Lindsay v. Lynch, 2 Sch. & Lef. 1.

4. There is a material and fatal variance between the allegations and proof.—Morgan v. Crabb, 3 Port. 470; Goodwin v. Lyon, 4 *ib.* 306; Duren v. Parsons, 5 *ib.* 345; Maury v. Mason, 8 *ib.* 211; McKinley v. Irvine, 13 Ala. 681; Langdon v. Roane, 6 *ib.* 518; Graham v. Tankersley, 15 *ib.* 634; Gilchrist v. Gilmer, 9 *ib.* 985; Julian v. Reynolds, 11 *ib.* 960; Ansley v. Robinson, 16 *ib.* 793; Paulding v. Lee & Ivey, 20 *ib.* 754; Clements v. Kellogg, 1 *ib.* 330; Gibson v. Carson, *ib.* 421.

5. No part performance is shown sufficient to take the case out of the statute of frauds—2 Story's Equity, § 760; Clinan v. Cooke, 1 Sch. & Lef. 22–40.

6. The insolvency of Sims, and his consequent inability to perform his part of the contract, constitute a sufficient ground for refusing a specific performance.—Blackwilder v. Loveless, 21 Ala. 371; Turner v. Clay, 3 Bibb's R. 53; Tunstal v. Taylor, 1 A. K. Marsh. 43; Johnston's Heirs v. Mitchell's Heirs, *ib.* 227; Abney v. Brownlee, *ib.* 240.

GOLDTHWAITE, J.—The principal object of the present suit is, to enforce the specific performance of an agreement made by the complainant with one McEwen, in his lifetime, in relation to certain real estate in the town of Cahaba. The bill purports to set out this agreement according to its legal effect. The charge is, "that upon the said purchase by the said James A. McEwen of the said lots and improvements, the said McEwen and your orator was to have and own jointly all the estate purchased as aforesaid by the said McEwen

from the said Jackson—that is to say, the said McEwen was to own one half the property, and your orator one half of the said property ; your orator to superintend the erection of certain buildings of brick, as mentioned in the deed of mortgage on said lots, to repay to the said McEwen the moneys by him paid out, and the interest thereon, on account of said purchase; and on account of the said buildings, and for all provisions, horses, wagons, and mules furnished by the said McEwen for the benefit of said firm ; and your orator to take charge of the same as a hotel, and have one-half of the profits thereof, and one-half of the rents thereof; and the said proceeds to be applied to the payment of said debt."

The bill concedes that the agreement was a verbal one, and seeks to take it out of the effect of the operation of the statute of frauds, by alleging a partial execution on the part of Sims. But it is entirely unnecessary to consider it with reference to this, as there are other grounds which would prevent a court of equity from enforcing it.    We are inclined to the opinion, that the agreement as charged is so vague and uncertain, that a specific performance might well be refused upon that ground. But, if this objection does not apply, and if it be conceded that the testimony fully establishes the agreement as charged ; yet, as it is proved that Sims is insolvent, the consequence would be, that if he was allowed to claim the benefit of it, there would be no certainty that his portion of the rents, and his share of the profits of the hotel, which are the only sources to which he could look as the means of furnishing his proportion of the purchase money, or repaying the advances, would be sufficient for those purposes.    The purchase money has a long time to run ; and if the rents are not sufficient to meet it, (and the evidence shows, it is not probable that it can be realized from that source,) then the deficiency, or at least Sims' proportion of it, must be supplied out of the profits of the hotel business—a business uncertain and precarious in its character.    Should this fail, Sims alone could be looked to ; and he, as we have seen, is insolvent.    Equity uses a sound discretion in enforcing the specific performance of contracts ; and it could not, consistently with the principles which regulate its action in this branch of its jurisdiction, require one party to perform, when it was uncertain whether the other

could fulfil the terms of the contract on his part.—Story's Equity, §§ 750, 751.

It must also be remembered, that the partnership in the hotel business was dissolved by the death of McEwen. There was no stipulation that the business should be continued after his death; and whatever doubts there may be as to the right in such case to continue the partnership with his representatives after his death, had there been such a stipulation, in the absence of any such stipulation there can be no doubt that the partnership terminated. Suppose the chancellor had said, Go on, retain possession of the premises, keep up the hotel, apply the rents and profits to the discharge of the purchase money and the reduction of the advances made by McEwen; and after five or six years the debt was not extinguished,— not even reduced, and Sims insolvent. It is no answer to say that such a result would not probably ensue. We cannot say, with any degree of certainty, that it would not, and courts of equity will not enforce contracts from which such consequences might flow.—Story's Eq., § 750.

In relation to the unsigned writing, which, it is charged, embodies the agreement set up by the bill, and which is proved by the evidence: It does not in any respect strengthen the complainant's case. If it is the same contract, the same objections which we have already considered apply to it, and it would be impossible to carry it into effect, so that the other party, or those who represent him, could be sure to have the benefit of what he contracted for.

If, however, the contract established by the evidence varies materially from that charged, (and we incline to the opinion that it does so in the present case.) although a specific performance may, if the terms are such as will admit of it, be decreed at the request of the defendant, who in his answer sets up the agreement as proved, instead of compelling him to resort to a cross-bill, as was the old practice (Story's Eq. Pl. § 391, note 1); yet the same rule applies to the plaintiff as in other cases—he must prove the case the bill makes.— Sugden on Vendors, (7th edit.) 217; Higginson v. Clowes, 15 Ves. 525; Lindsey v. Lynch, 2 Sch. & Lef. 1; Forsyth v. Clark, 3 Wend. 637; Deniston v. Little, 2 Sch. & Lef. 11, n.

It is urged, however, that, although the specific perform-

ance of the contract cannot be decreed, the court should have allowed the complainant compensation for the labor performed by him in the erection of the building. It is to be observed, that neither the writing nor the contract charged provides for any other labor than the superintendence of the work, and for that reason any other services than those stipulated for by the agreement itself could not be taken into consideration in a suit of this character. In other words, there is no principle which would enable him, in a suit upon a contract in equity, to recover for anything outside of it.

But even as to the services performed by Sims in the superintendence of the building, which properly fell within the contract, we do not think he could properly obtain compensation in the present suit. The general rule is, that in suits of this character, compensation is regarded as an incident only, unless there is a special equity which would authorize the court to take hold of the subject-matter and grant relief (Story's Eq. § 799, and cases there cited) ; and it would seem to be very clear, that equity could not take jurisdiction of a bill, for the sole purpose of assessing damages resulting from a breach of contract. Lord Kenyon went a great way in Denton v. Stewart, 1 Cox, 258, in awarding an issue of *quantum damnificatus* on a bill for specific performance, where the enforcement of the contract was impossible from the fact that the defendant had sold the house to another ; and it has been followed with doubt and reluctance.—Todd v. Gee, 17 Ves. 273. In the first case, however, the defendant had disabled himself *pendente lite* (Todd v. Gee, *supra*, note b), so that the court had jurisdiction when the bill was filed. There is, however, no special equity in the present case for the appellant to rest upon. The agreement, not being in writing, may be void at law, so that no action for its breach can be maintained ; but services rendered under it can be recovered for, upon the same principle that money paid under it could be recovered.—Allen v. Booker, 2 Stew. 21. There being no special equity, and the appellant not being entitled upon his agreement to a specific performance, no relief could be granted.

Decree affirmed, at the costs of the appellant.