WEBB *vs.* WEBB'S HEIRS.

[BILL IN EQUITY BY HEIRS AT LAW OF DECEASED HUSBAND FOR REFORMATION AND SPECIFIC PERFORMANCE OF ANTE-NUPTIAL CONTRACT, AND INJUNCTION OF PROCEEDINGS AT LAW BY WIDOW FOR DOWER.]

1. *Ante-nuptial contract, barring dower, specifically enforced.*—In this case, a specific performance of an ante-nuptial contract, barring the wife of dower, was decreed against her, at the suit of the heirs-at-law of her deceased husband, where the contract secured to her separate use her interest in the estate of a former husband, which was worth about $1200, and further, "during her life or widowhood," in the event of her survivorship, "one third of the estate, both real and personal, of which the said [husband] should happen to die seized and possessed" ; it being shown that the estate of the husband, who was between 60 and 70 years old at the time the contract was made, and had four children by a former wife, was worth about $25,000, of which $10,000 was in lands ; that the wife, who was then over 40 years old, was principally induced to make the contract, that she might be better enabled to educate her children by her former husband ; and that the contract was partially performed, so that the parties could not be placed in *statu quo*.

2. *Repugnancy in deed.*—The rule is well settled, that if two clauses of a deed are so repugnant that they cannot stand together, the first must prevail over the last ; but the granting clause will control an introductory recital, as to the interest intended to be conveyed.

3. *Answer averring affirmative matter in avoidance.*—Where the defendant, in a bill for the reformation and specific performance of an ante-nuptial contract, was required to answer all the allegations of the bill, particularly as to the existence of the alleged mistake, and to say whether the deed contained the true contract of the parties ; and the answer, admitting the alleged mistake, averred that another material stipulation of the contract was by mistake omitted from the deed,—*held*, that this averment was not responsive, but was affirmative matter requiring to be proved.

APPEAL from the Chancery Court of Limestone.

Heard before the Hon. E. D. TOWNES.

THIS bill was filed by the heirs-at-law and distributees of John Webb, deceased, against his widow and personal representative; asking the reformation and specific performance of an ante-nuptial contract entered into between said Webb and his second wife (now his widow), and an injunction of certain proceedings instituted by Mrs. Webb in the probate court for her dower and distributive share of her said husband's estate. The ante-nuptial contract, upon which the principal questions in the case arise, is as follows:

"This indenture, made and entered into on the 13th day of September, A. D. 1832, by and between John Webb, of the county of Limestone, in the State of Alabama, of the first part; Mary S. Lewis, widow and relict of Peter C. Lewis, deceased, late of Madison county in said State, of the second part; and John R. B. Eldridge, of the third part, (the said parties of the second and third parts being residents of said county of Madison,) *witnesseth*, that whereas, with the permission of Divine Providence, a marriage is intended to be shortly had and solemnized between the said John Webb and Mary S. Lewis; and whereas the said Mary S. Lewis is entitled to a distributive share of one fourth part of the personal estate of the said Peter C. Lewis, and also to a life estate in one third part of all the lands and tenements of which the said Peter C. Lewis died seized and possessed; and whereas the said John Webb, with the concurrence and wish of the said Mary S. Lewis, is willing and desirous that the said property belonging to the said Mary should, previous to the consummation of said marriage, be placed beyond the reach, power and control of the said John Webb; and whereas it is agreed between the said John Webb and Mary S. Lewis, that if the said Mary S., after the consummation of the said marriage, should happen to survive the said John Webb, then, and in that case, the said Mary should be entitled to a life estate in all the property, both real and personal, of which the said John Webb should die seized and possessed, so long (and no longer) as the said Mary should remain in a state of widowhood: Now this indenture witnesseth, that for and in consideration of the premises above set forth, and also for and in consideration further of the sum of five dollars, to the said Mary S. Lewis in hand paid by the said John R.

B. Eldridge at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, she, the said Mary S. Lewis, by and with the privity, consent and agreement of the said John Webb, testified by his being made a party to, and his sealing and delivery of these presents, hath granted, bargained, sold, assigned, transferred and set over, and by these presents doth grant, bargain, sell, assign, transfer and set over, unto the said John R. B. Eldridge, his executors, administrators and assigns, all the said one fourth part of the personal estate of the said Peter C. Lewis, deceased, and all the said one third part of the lands and tenements of which the said Peter C. Lewis died seized or possessed ; to have and to hold the said property hereby conveyed, or intended to be conveyed, unto the said John R. B. Eldridge, his executors, administrators and assigns, upon such trusts nevertheless, and to and for such intents and purposes, and under such provisions and agreements, as are hereinafter mentioned—that is to say, in trust for the said Mary S. Lewis and her assigns, until the solemnization of the said intended marriage ; and from and after the said solemnization of the said intended marriage, then upon trust that the said John R. B. Eldridge, his executors, administrators and assigns, shall so permit the legal heirs of the said Peter C. Lewis, during the joint lives of the said Mary S. Lewis and her said intended husband, John Webb, to have, receive, take and enjoy all the interest and profits of the said property hereby conveyed and intended to be conveyed, to and for their own use and benefit ; and from and after the decease of such of them, the said John Webb and Mary S. Lewis, as shall first happen to die, then upon trust that he, the said John R. B. Eldridge, his executors, administrators and assigns, shall and do assign, transfer and pay over all the said property hereby conveyed and intended to be conveyed, unto the said Mary S. Lewis, in case she should survive the said John Webb, and should, moreover, marry again after the death of said John Webb ; but, if the said Mary S. Lewis should happen to die before her intended husband, the said John Webb, then and in that case it shall be the duty of the said John R. B. Eldridge, his executors, administrators and assigns, to transfer, assign and convey the said personal prop-

erty hereby conveyed, or intended to be conveyed to him, to such person and persons, and at the time and times, and in such parts and proportions, manner and form, as she, the said Mary S. Lewis, shall from time to time, notwithstanding her coverture, by any writing or writings under her hand and seal, attested by three or more credible witnesses, or by her last will and testament in writing, to be by her signed, sealed and published, and declared in the presence of the like number of witnesses, direct, limit, or appoint; to the intent that the same may not be at the disposal of, or subject to, the control, debts, forfeitures, or engagements of the said John Webb; and in default of such direction, limitation or appointment by the said Mary S. Lewis, then and in that case to the legal heirs of the said Peter C. Lewis, and to such heirs of the body of the said Mary S. as shall happen to be born during the existence of said intended marriage, to the same intent as above set forth; and then this trust to cease and be ended. And this indenture further witnesseth, that for and in consideration of said intended marriage, and also for the further consideration of five dollars in hand paid to the said John Webb, at and before the sealing and delivery of these presents, by the said Mary S. Lewis, the receipt whereof he doth hereby acknowledge, he, the said John Webb, with the knowledge, privity and consent of his intended wife, testified by her being made a party to, and her sealing and delivery of these presents, doth covenant and agree with the said Mary S. Lewis, that in case she, the said Mary S. Lewis, after the consummation of the said intended marriage, should happen to survive the said John Webb, her intended husband, then and in that case she shall be entitled to have, demand, recover and receive, during the term of her natural life or widowhood, should she subsequently marry, one third part of the estate, both real and personal, of which the said John Webb should happen to die seized and possessed; and the said Mary S. Lewis, on her part, covenants and agrees with the said John Webb to accept said settlement in lieu of all claims which by law she might otherwise have upon the estate of the said John Webb, if after said marriage she should happen to survive him; and that if, surviving him, the said John Webb, she, the said Mary S. Lewis, should

subsequently marry again, then and in that case she, the said Mary S. Lewis, hereby forever quit-claims all and every right and demand, whether of dower or of a distributive share, in and to the estate of the said John Webb. In witness whereof," &c.

The bill alleged, that this deed did not express the true contract between the parties, in this : that it was their intention, that the said Mary S. Lewis, in the event of her surviving said John Webb, should be entitled, during her natural life or widowhood, to one third part only of the real and personal estate of which said John Webb might die seized and possessed ; and that the clause of the deed, giving her in that event an estate for life or widowhood in all the property of which said John Webb might die seized and possessed, was inserted through mistake on the part of the draftsman. The bill further alleged, that the marriage contemplated between the parties was solemnized soon after the execution of this deed, and the parties lived together until the death of John Webb, which occurred in July, 1850 ; and that Mrs. Webb, since his death, has instituted proceedings in the probate court for her dower and distributive share of his estate. Mrs. Webb answered the bill, admitting the execution of the ante-nuptial agreement, and the alleged mistake in its terms ; alleging that it was further stipulated by said agreement, though by mistake the writing does not contain any such provision, that said Webb should, out of his own means and property, defray the expenses of the education of respondent's two youngest children by her former husband; insisting that said contract was not supported by an adequate and sufficient consideration to make it binding on her, and ought not to be enforced against her, and that it was violated by said Webb in his lifetime ; and demurring to the bill for want of equity.

On final hearing, on bill, answers and proof, the chancellor sustained the validity of the ante-nuptial contract, decreed a specific performance of it, and perpetuated the injunction ; and his decree is now assigned as error.

DAVID P. LEWIS, for the appellant.—I. The bill should have been dismissed for want of equity, because it did not

show that Mrs. Webb had married again. According to the terms of the contract, she did not forfeit her dower and right to a distributive share of the personalty of her husband's estate, unless she again married. The words of the contract are, "If, after said marriage, she should happen to survive him, and if, surviving him, she should marry again, then and in that case she quit-claims all and every right and demand, whether of dower or of a distributive share, in and to the estate of the said John Webb"; thus making the forfeiture of her rights in and to his estate depend upon two contingencies—her surviving him, and her marrying again.

II. The court will not enforce a specific performance of the contract,—

1. Because of its uncertainty. The bill alleges, that the written instrument does not express the true contract of the parties; while the answer, in direct response to the interrogatories, "Does it [the deed] contain the agreement made between herself and said John Webb," and "Let her answer all the allegations of the bill," sets up a contract different from that alleged in the bill, as well as that evidenced by the deed; and the proof does not remove this uncertainty. On this state of pleading and proof, the court cannot know that it is enforcing the real contract of the parties. Equity will not enforce the specific performance of a contract, unless its terms are clear and free from doubt.—4 Porter, 297; 3 Ala. 421; 6 Paige, 288; 14 Peters, 77; 5 Wendell, 638. Uncertainty in the terms of a contract is an insuperable obstacle to a decree for a specific performance.—Aday v. Echols, 18 Ala. 353; 1 Madd. Ch. 425; 5 Vesey, 452; 9 United States Digest, 161, § 140.

2. On account of the inadequacy of consideration. Mere inadequacy of consideration alone, without any other ingredient, will stay the exercise of the discretion of the chancery court from enforcing a specific performance.—2 Ala. 91; 1 Madd. 424; 6 Johns. Ch. 222; 2 ib. 23; 1 Dess. 257; 4 Peters, 311; 1 Vesey, sr., 279. Even though the inadequacy is not so gross as to amount to fraud.—10 Vesey, 292–300; 1 Bro. C. C. 484; 2 Ala. 83. The power rests in the discretion of the court, and cannot be demanded *ex debito justitiæ*.—2 Ala. 91; 6 Johns. Ch. 222; 12 Vesey, 331. It will

only be exercised in cases of extraordinary fairness.—1 Eq. Digest, (Barb. & Har.) 103, § 37 ; *ib.* 117, § 53 ; 3 Hayw. 200 ; 3 Cowen, 445 ; 4 Peters, 311 ; 6 Johns. Ch. 111. The difference is well settled, between that degree of unfairness which will induce the court to interfere actively by setting aside a contract, and that less degree of unfairness on account of which the court will merely withhold its aid, and refuse to enforce a specific performance.—5 Peters, 264 ; 7 Ala. 71. It is submitted that a specific performance cannot, consistently with the principles asserted in these authorities, be decreed in this case. In addition to the inadequacy of the consideration, which alone is sufficient to justify the refusal of the relief prayed, the provision for Mrs. Webb out of the estate of her husband was contingent, and dependent on his will ; and it was in his power, by divesting himself of his estate, to leave her penniless. Public policy demands the condemnation of a contract which contains such a feature.—Lightfoot v. Colgin, 5 Munford, 42.

3. Because the contract was not performed by Webb. The proof shows that a considerable part of the property of Peter C. Lewis, deceased, "came into the possession, and under the control of John Webb" ; that household and kitchen furniture to the amount of several hundred dollars, the use of slaves worth nearly two hundred dollars, and other items of less value, went into his possession, contrary to the provisions of the deed,—thereby increasing his estate, and diminishing the trust estate of Mrs. Webb. It is further shown, that John Webb did not perform the duties which, by the terms of the contract as set up in the answer, he undertook to perform, in educating the children of Mrs. Webb. The allegations of the answer, as to these terms of the contract, are responsive to the bill, and are not contradicted by the proof. The party who seeks the specific performance of a contract, must show that he has complied with the stipulations which it imposed on him, or that he is in no default on account of his failure to do so ; and his performance must be according to the true intent and meaning of the contract.—4 Porter, 310–74 ; 10 Ala. 777 ; 4 Cranch, 137 ; 1 Dess. 161 ; 2 Sumner, 295 ; 1 Madd. Ch. 418 ; 4 Peters, 311 ; 6 Peters, 389 ; 2 Wheaton, 336 ; 1 Equity Digest, (Barb. & Har.) 103, § 37 ; *ib.* 112,

§§ 6–13; 8 U. S. Digest, 125, § 152; 3 Hayw. 200; 3 Cowen, 445; 6 Johns. Ch. 111; 14 Vesey, 519; 2 Vesey, sr., 298; 1 Peters' C. C. R. 380.

4. The contract which the decree enforces, is not the contract which was really entered into between the parties. The bill alleges that the deed does not express the contract of the parties, and the answer admits the allegation; yet the decree enforces a specific performance of the deed.

5. The decree violates the fundamental rule, which requires that a decree should be *secundum allegata et probata*. Even if the proof makes out a case which entitles the complainant to recover, he cannot recover on a bill, the allegations of which are not adapted to the case proved.—Gibson v. Carson, 3 Ala. 421; Clemens v. Kellogg, 1 Ala. 330. To enforce the specific performance of a contract, the complainant must make out the contract as laid by clear and satisfactory proof. 6 Vesey, 297; 1 Johns. Ch. 131; 2 Wheaton, 336; 2 Sumner, 295; 4 Watts & Serg. 228; 18 Ala. 353. If the agreement admitted in the answer differs from that stated in the bill, the plaintiff cannot have a decree except upon proof *aliunde*.—1 Peters' C. C. R. 380; 1 Madd. Ch. 382; 1 Barb. & Har. Eq. Digest, 123, § 104. These authorities present insuperable obstacles to a specific performance on the pleadings and proof in this case.

6. The evidence shows that there were outside assurances and reliances, and departures from these assurances by John Webb, as well as from the contract, which would render a specific performance at the instance of the complainants highly inequitable.—Gould v. Womack, 2 Ala. 83; Tamlyn's Equity Evidence, 8 (41 Law Lib.); 14 Vesey, 519; 2 Vesey, sr., 298.

7. The estate of John Webb has been considerably benefited by his disregard of the contract; and these breaches of the contract were in such a state of facts, that objections by the parties interested, either the trustee or the heirs of Lewis, could not have been urged without a breach of social delicacy. Webb's disregard of the contract is shown to have resulted in a loss to the estate of Lewis, fully equal in value to Mrs. Webb's interest in that estate. It would be highly inequitable, under these circumstances, to enforce a specific

performance of the contract in favor of Webb's heirs. The maxim, that he who seeks equity must do equity, is enforced in few cases more rigidly than in suits for specific performance.—2 White & Tudor's L. C. 550 ; 4 McMullen's Eq. 1 ; 1 Strobh. Eq. 356 ; 9 Ala. 755.

III. The English decisions under the statute of jointures, (27th Henry VIII, ch. 10,) and the decisions in other States under similar statutes, cannot be regarded as authority here, where the common-law rules prevail, for the purpose of barring the right to dower ; yet, for the purpose of sustaining the right to dower, they are authority. Because the right to dower was held barred by the joint force and energy of the statute and common law, does not show that it would have been barred by the rules of the common law alone ; but, if the common law and statute combined were not sufficient to bar the right, *a fortiori*, the common law alone would not bar it.—McCartee v. Teller, 8 Wendell, 303 ; Stilley v. Folger, 14 Ohio, 643 ; 4 Kent's Com. 58 ; Reeve's Dom. Rel. 57 ; 1 Greenl. Cruise, 200. The decisions under the jointure statutes, under which no question can arise as to the adequacy of the provision, are especially delusive on the question of the adequacy of consideration.—1 Bright on H. and W. 434 ; 1 Roper on H. and W. 462 ; 1 Bro. C. C. 116 ; 4 *ib.* 413. But marriage articles for jointure or settlement, and covenants to settle lands in jointure, are not within the statute 27th Henry VIII, and are adjudicated alone upon the principles which govern contracts ; and in these cases, when resort is had to equity to enforce a specific performance, the court looks to the adequacy of the consideration and provision, and inquires whether the complainant has fully performed the contract.—Atherley on Marriage Settlements, 91, note (*a*); 2 Cas. in Ch. 17 ; 2 P. Wms. 243 ; 1 Madd. Ch. 420 ; 1 Vesey, sr., 376 ; 3 Dess. 190 ; 34 Maine, 135 ; 9 Gill, 361; 4 McLean, 99.

ROBINSON & JONES, W. P. CHILTON, and W. H. WALKER, *contra.*—1. Dower is admitted to be a common-law right, which is much favored, and which cannot be barred, at law, by any ante-nuptial contract. In England, this hardship of the common law was remedied by the statute of jointures, 27th

Henry VIII, ch. 10, which has been substantially re-enacted in New York, Massachusetts, and several other American States. The strictness of construction which was applied to this statute greatly restricted its beneficial operation, and caused frequent recourse to the extraordinary powers of the court of chancery. The jurisdiction of chancery in these cases seems to have been based upon two distinct principles : 1st, on the statute, in which class of cases it acted by analogy to the legal bar ; and, 2d, on the ground of a contract between parties competent to contract. In the first class of cases, the idea of a contract is wholly discarded ; the assent of the wife is not considered an operative circumstance ; her infancy is no objection ; she is not even consulted ; her legal rights are taken away from her by operation of law ; and the only question is concerning the adequacy of the provision made for her. In the other class of cases, where the wife is an adult, capable of contracting, and actually does contract in reference to her intended marriage, the question of equitable jointure is not involved : the court considers the contract on its merits, and, in decreeing or refusing a specific performance, tests the case by the same principles which govern other contracts. These propositions are deducible from a careful examination of all the cases, English and American ; and but a few loose *dicta*, which militate against them, can be found.—Blunden v. Barker, 1 P. Wms. 633 ; Charles v. Andrews, 9 Modern, 151 ; Glover v. Bates, 1 Atk. 439 ; Walker v. Walker, 1 Vesey, sr., 54 ; Slocombe v. Glubb, 2 Bro. C. C. 545 ; Caruthers v. Caruthers, 4 *ib.* 500 ; Simpson v. Gutteridge, 1 Mad. 609 ; Birmingham v. Kirwan, 2 Sch. & L. 444 ; Drury v. Drury, 1 Eden, 39 ; Estcourt v. Estcourt, 1 Cox, 20 ; Chitty v. Chitty, 3 Vesey, 545 ; Smith v. Smith, 5 *ib.* 189 ; Davila v. Davila, 2 Vernon, 724 ; Dyke v. Rendall, 13 English Law and Equity R. 410, overruling Power v. Sheil, 1 Molloy, 296 ; Gould v. Womack, 2 Ala. 83 ; Stilley v. Folger, 14 Ohio, 610 ; McCartee v. Teller, 2 Paige, 511 ; S. C. 8 Wendell, 267 ; Andrews v. Andrews, 8 Conn. 80 ; Selleck v. Selleck, *ib.* 85, note.

2. In this State no statute similar to 27th Henry VIII has ever been enacted, and therefore the case must be adjudicated upon the principles which govern other cases of specific per-

formance ; and those principles, so far as applicable, are the following : In the first place, specific performance is never a matter of right, but of sound discretion in the court ; yet this discretion is not an arbitrary, or capricious assumption of authority, but is regulated, as nearly as may be, by general and established rules. The first of these general rules is, that a specific performance will not be refused, where the contract is executory, on account of the inadequacy of the consideration, unless the inadequacy is so great as to show that the contract is unfair, inequitable, and unconscionable. Gould v. Womack, 2 Ala. 83 ; Caruthers v. Caruthers, 4 Bro. C. C. 500 ; Dyke v. Rendall, 13 Eng. Law and Eq. 410 ; Cathcart v. Robinson, 5 Peters, 265 ; Seymour v. De-lancey, 6 Johns. Ch. 222 ; Selleck v. Selleck, 8 Conn. 85, note ; Andrews v. Andrews, 28 Ala. 444 ; Stilley v. Folger, 14 Ohio, 610 ; *Ex parte* Marsh, 1 Atk. 158 ; Brown v. Jones, *ib.* 188 ; Kelynge, 17 ; 3 Vesey, 545. But this rule only ap-plies to contracts which are purely executory ; and where the contract has been partly performed, another general rule applies—that if the party asking a specific performance, has performed a valuable part of the contract, and is in no default as to the residue, he is entitled to a decree ; especially, where it is impossible to place him in *statu quo.*—Hays v. Hall, 4 Porter, 375 ; Casey v. Holmes, Bott & Earle, 10 Ala. 777; Andrews v. Andrews, 28 Ala. 434 ; 2 Story's Equity, §§ 759, 769, 772-4, and cases cited.

3. On the facts of the case, as shown in the record, ought the wife to be held to her contract ? The contract was made between parties who were advanced in years, and in every way capable of contracting : Mr. Webb is shown to have been nearly seventy years old, and Mrs. Webb admits that she was in her fortieth year. It does not seem to have sprung solely from affection, or to have been entirely free from mo-tives of convenience. Mrs. Webb admits in her answer, " that her primary object in entering into said contract was to se-cure the means of educating her children" ; thus showing deliberation, sagacity, and the cool exercise of judgment on her part. No fraud, deception, unfairness, or misrepresenta-tion, in entering into the contract, is pretended. In point of consideration, the provision secured to the wife was as ample

as she could reasonably have expected. By the contract she reserved to her present, vested and exclusive interest all the property belonging to her by virtue of her former marriage, which is shown to have been worth about $1,800 ; and this afforded her the means of educating her children as she desired. In addition to this, the contract secured to her, "during her life or widowhood, one third of all the property, both real and personal, of which the said John Webb should happen to die seized and possessed." Mr. Webb's estate is proved to have been worth, at that time, about $25,000, of which about $6,000 was in real estate; and he had four children. If there had been no contract, the widow's dower would have been one third of all the real estate—just what the contract gives her ; and her distributive share of the personalty would have been one fifth absolutely, instead of one third during life or widowhood. That the husband might dispose of the personalty, and thus defeat her rights in it, is no objection to the contract, because he might by the same means cut off her distributive share at law ; and the restriction as to widowhood, at her time of life, cannot be considered onerous. Regarding the husband's estate alone, exclusive of the other property reserved to her separate use, the provision for the wife is ample, and more than an equivalent for the contingencies which she surrendered. But this inquiry into the adequacy of the consideration does not necessarily arise : the fact that the husband has performed his part of the contract, and that the parties cannot now be placed in *statu quo,* renders all inquiry into the adequacy of the consideration superfluous. Conceding the fact, which is urged against this position, that Mr. Webb took possession of a female servant and some household furniture belonging to Mrs. Webb, it avails nothing. There is no proof that the property was carried to his house, or was retained or used by him, without or against her consent. Being the separate property of Mrs. Webb, she could deal with it as she chose ; she had a right to carry it to his residence, as she doubtless did, for her own use and benefit ; and if her rights were invaded, she had a remedy.

4. But it is said that the chancellor should have reformed before he specifically enforced the contract. The answer is,

that no reformation was necessary, because the answer admitted the alleged mistake in the deed, and the recitals are controlled by the granting clause.—Bacon's Abr., " Deed" ; Cruise's Digest, 293–6 ; 7 Sm. & Mar. 495.

5. The contract alleged is substantially proved. The affirmative allegation of the answer, as to the existence of a mistake which is not alleged in the bill, is matter in avoidance, and is not proved.—2 Stewart, 280 ; 4 Ala. 60.

STONE, J.—We do not deem it at all necessary to consider the law of jointure, as settled in England under the 10th chapter of the statute 27 Henry VIII, and in many States of this union under similar enactments. Nor is it necessary that we should discuss the system of equitable jointures, which, in analogy to the statutes, has grown up under those jurisdictions, and which, in many cases, perfected a bar, where material requisitions and formalities of the statute were omitted. Neither is it necessary that we should declare the effect of an ante-nuptial agreement, purporting to bar dower, entered into by a female minor, or by her parents, guardian or friends, for her benefit. See, on these points, Drury v. Drury, 1 Eden, 59, re-printed in 8th Wendell, pp. 297 to 338; Davila v. Davila, 2 Vernon, 724; Dyke v. Rendall, 13 Eng. Law and Equity Rep. 410 ; McCarter v. Teller, 2 Paige, 511; S. C. 8 Wend. 267; Stilley v. Folger, 14 Ohio, 610 ; also, the cases cited on the briefs of counsel.

In Gould v. Womack, 2 Ala. 83, a bill was filed to obtain specific execution of an agreement entered into before marriage, by adults. The object of the agreement was, to bar Mrs. Hays of dower ; and that record raised the same legal questions as are presented in this.

In that case, our predecessors declared the following legal principles :

1. " That equity has jurisdiction to enforce the specific performance of an ante-nuptial agreement, fairly entered into, between parties able to contract, in the same manner, and subject to the same restrictions, as other cases of the specific performance of contracts.

2. "That in this State, where there can be no legal bar to dower, and where an ante-nuptial agreement can only be

enforced in chancery, as any other contract which the court may be called on specifically to perform, its aid cannot be had, unless the contract is fair, just and reasonable in all its parts, even if there be neither fraud nor misrepresentation, mistake or surprise, or if the inadequacy be not so great as to be of itself evidence of fraud.

3. "That the only test is, to institute a comparison between the provision made in the will, and the actual value of her dower at law ; and it is by precisely the same process, that a knowledge of the fact of inadequacy in any contract can be ascertained.

4. " That a provision to bar dower, where there is neither mistake, surprise, nor fraud, need not be as valuable as the dower ; but it must not be greatly deficient in value ; nor would this court be disposed to institute a nice comparison, especially in a case where, though not fully equal in value to the dower, the amount secured in lieu of it was a competent livelihood.

5. " That the mere fact that the provision is an annuity, would, of itself, be sufficient to prevent this court from compelling the widow to accept it, in lieu of dower. The law gives her an absolute estate in her portion of the slaves and other personal property of the husband ; and it would be doing her great injustice, to require her to accept, in lieu of it, a mere annuity.

6. " That at common law, by the marriage, the wife acquired a right to be endowed of one third part of her husband's lands. This right she could not alien, or dispose of, in consequence of two maxims of the common law—first, that no right can be barred before it accrues ; second, that no right or title to an estate of freehold can be barred by a collateral satisfaction.

In Blackman v. Blackman, 16 Ala. 633, the doctrine asserted in the sixth proposition above was distinctly re-affirmed, as applicable to all cases where an ante-nuptial agreement is relied on, at law, to bar the widow's dower. The judge who delivered the opinion in the case cited, referred to and commented on the opinion in Gould v. Womack, without disapprobation. He, however, declined to express any opinion on the effect, in equity, of the agreement then under discussion.

39

We fully assent to the doctrine asserted in the case of Blackman v. Blackman, *supra*, as governing courts of common law in this State. We also hold, that the proposition stated above, numbered 6, as extracted from Gould v. Womack, is a correct legal proposition, when applied to law courts, because, in this State, no such legal bar to dower has been provided.

The proposition numbered 5, taken from Gould v. Womack, is not applicable to this case, as no annuity was provided by the agreement we are considering. Hence we need not inquire as to its correctness.

We have no disposition to disturb the propositions numbered from 1 to 4 inclusive. We are not only satisfied to acquiesce in them as the settled law of this State, but we heartily concur in the argument by which they are supported. Neither do we wish this opinion to be regarded as assailing or sanctioning the proposition numbered 5. We simply withhold an expression of opinion upon it, as being unnecessary in this case.

Let us then, by instituting a comparison between the value of the provision made for Mrs. Webb by the ante-nuptial agreement, and the actual value of her dower at law, determine whether that provision was *fair, just, and reasonable in all its parts*.

According to the proof, Mr. Webb's estate, at the time of the marriage, was worth twenty or twenty-five thousand dollars. His real estate was worth about ten thousand dollars. In the real estate, his wife, if she survived him and became his widow, would be entitled to dower; and it was not in his power to alien or dispose of it, so as to deprive her of that right, without her consent. Dower is a life estate in one-third of the lands. The fee simple in that one-third was worth, say $3,333. What proportion would the life estate bear to the fee? Probably not one-half; but state it at one-half, $1,666. This, then, would be the value of the dower, at the death of the husband. But this must be farther reduced by two considerations: first, the enjoyment would be necessarily postponed until the death of Mr. Webb; and secondly, the estate might never attach, because she might not survive her husband. Its absolute value cannot be demonstrated;

but we presume her contingent interest in her husband's real estate, if they had married without a contract, would not then have commanded as much as one thousand dollars.

If Mr. and Mrs. Webb had married without a contract in reference to her property, the marriage would have operated a present gift to him of her personal estate in possession, and such portion as he should reduce to possession during the continuance of the coverture.—See Magee v. Toland, 8 Porter, 37 ; Pitts v. Curtis, 4 Ala. 350 ; McDaniel v. Whitman, 16 Ala. 343 ; also, authorities collected in Mason v. McNeill, 23 Ala. 201 ; Gibson v. Land, 27 Ala. 117 ; Walker v. Fenner, 28 Ala. 367.

So, by such marriage, Mr. Webb would have acquired, at least, an estate during their joint lives, in her dower interest in the lands of her first husband.—Neill v. Johnson, 11 Ala. 615 ; Cheek v. Waldrum, 25 Ala. 152.

Mrs. Webb's interest in the estate of Mr. Lewis, her first husband, was worth as much as twelve hundred dollars ; perhaps more. This, by the ante-nuptial agreement, she secured to her present and exclusive enjoyment. This vested interest would then have sold in the market for more money, than her contingent interest in her husband's lands would have yielded, and hence was a fair equivalent for it. Indeed, when we take into the account the admitted fact, that this arrangement was perfected, the better to enable Mrs. Webb to educate her children, we cannot say that the contract, in this aspect, was not both a prudent and profitable one.

But it is contended in argument, that the provision secured by the settlement to Mrs. Webb, out of Mr. Webb's estate, was not fair, just and reasonable, because it secured to her, only during widowhood, " one third part of the estate, both real and personal, of which the said John Webb should happen to die seized and possessed"; and that it was in the power of Mr. Webb to defeat this provision, by disposing of his entire estate during his lifetime. If the entire provision for Mrs. Webb depended on such contingency as is above expressed, chancery would withhold its aid in carrying out such contract.—Sims v. McEwen, 27 Ala. 191 ; 2 Story's Equity, §§ 750, 769. But such is not this contract. We have seen that, in securing her own estate to her sole and

separate use, Mrs. Webb obtained a full equivalent for any contingent dower she might obtain in her husband's lands. The only other interest she parted with, is the right she would have, if she survived him, to share as a distributee in the personal property belonging to his estate, which should remain after the debts were paid. Mr. Webb, at the time of the marriage, had four children ; and her distributive interest, under the law of descents, would have been one fifth part of the personal estate, left after the payment of debts, in absolute right. For this distributive interest, she, in the ante-nuptial contract, agreed to accept one third part of the estate, real and personal, of which he should die seized, to be enjoyed during the term of her widowhood.

It is difficult to institute a comparison between the several values of these interests. It is obvious that, during the period of her widowhood, the provision would have afforded her an ample support; and in such cases, as we have seen, it is not our duty to institute a nice comparison.—Gould v. Womack, *supra*. So long as she should remain a widow, the provision was much more abundant than her distributive share. At her time of life, it is scarcely presumable that she would contemplate a subsequent marriage; and we are led to suppose that the limitation to the period of her widowhood, presented no serious bar to her acceptance of the provision.

The argument, based on the fact that this contract gave Mr. Webb power to defeat Mrs. Webb's claim on his estate, by *disposing* of his personal property before her rights could mature by his death, though specious, is not solid. If they had married without ante-nuptial agreement, he would have had the same power to cut off her distributive interest, by disposing of his personal property.

As early as 1746, Lord Hardwicke said, " The constant doctrine of this court is, that it is in their discretion whether they will decree a specific performance, or leave the plaintiff to his remedy at law."—Joynes v. Statham, 3 Atk. 388. This doctrine has been steadily maintained, down to the present time.—Seymour v. Delancey, 6 Johns. Ch. 222 ; Ellis v. Burden, 1 Ala. 458 ; Gould v. Womack, *supra* ; 2 Story's Equity, §§ 736 to 742. " The question is, not what the court must do, but what the court may do, under the

circumstances." This discretion is not an arbitrary assumption of authority, but a sound discretion, " regulated, as near as may be, by general rules.—Pulliam v. Owen, 25 Ala. 492 ; Sims v. McEwen, 27 Ala. 184 ; Casey v. Holmes, 10 Ala. 777.

Hard and oppressive bargains will not be decreed to be performed, but the parties will be left to their remedies at law, if they have any.—Ellis v. Burden, 1 Ala. 459 ; Casey v. Holmes, 10 Ala. 777; Seymour v. Delancey, 3 Cow. 445 ; 2 Story's Equity, § 750. If either party has performed a valuable part of the contract, and is in no default ; and the other party has derived a benefit from such part performance, the court will not withhold its relief, unless there was fraud, undue advantage, or the bargain was palpably hard and oppressive.—Hays v. Hall, 4 Porter, 374 ; Casey v. Holmes, *supra* ; 2 Story's Equity, §§ 751, 771, 772, 774; Seymour v. Delancey, *supra* ; Andrews v. Andrews, 28 Ala. 432.

In the case last cited, Andrews v. Andrews, the husband was compelled, at the instance of the wife, specifically to convey slaves, worth four thousand dollars, upon a consideration which was, at most, worth perhaps five hundred dollars. In that case, as in this, the contract had been partially performed, and the parties could not be placed in *statu quo*. True, in that case, there were some outside circumstances, to which the court attached importance. But it still stands as an authority that the court will not, at all times, institute a critical comparison between the consideration received, and the value of the property agreed to be conveyed.

Without intending to unsettle the principles which controlled the decision in Gould v. Womack, but expressly re-affirming them, as far as indicated above, we cannot say, on the facts disclosed in this record, that the ante-nuptial contract was not " fair, just, and reasonable in all its parts." Mrs. Webb desired to educate her children. She obtained some present means for that purpose, by reserving her own property to her sole and separate use. In this she obtained more than an equivalent for her contingent dower interest in her future husband's lands. Add the advantage thus obtained by her to the interest in Mr. Webb's estate, secured to her by the agreement, and we feel bound to declare that the

provision afforded her reasonable maintenance, considered in reference to the property owned by Mr. Webb.

There is a repugnance between the introductory recitals in the deed, and the granting clause. The bill alleges that the recital is a mistake, and that the granting clause correctly expresses the interest intended to be conveyed. The answer admits the truth of this averment. Under this state of facts, we would, if necessary, correct the ante-nuptial agreement. The general rule is admitted, that parties are estopped from denying the facts recited in their deeds. Neither will they be permitted, in a court of law, to prove a consideration different from that expressed, so as to change the character of the instrument.—Murphy v. Branch Bank of Mobile, 16 Ala. 90 ; Eckles & Brown v. Carter, 26 Ala. 563. In the present case, the deed furnishes its own correction. The granting clause determines the interest intended to be conveyed, and prevails over the introductory statement.—Kershaw v. Boykin, 1 Brevard, 301. This is not intended to disturb the well-settled rule, that if two clauses in a deed are so repugnant that they cannot stand together, the first prevails over the last.—Gould v. Womack, *supra*. The bill, so far as it had for its object the reformation of the deed of settlement, was unnecessary.

The use of a house servant, and household furniture, supplied by Mrs. Webb to the family establishment, was doubtless a gratuity, intended to promote her own comfort, as well as that of the family. She can make no charge for them, and they oppose no barrier to the bill in this case.— Roper v. Roper, at the June term, 1856.

The answer sets up, as a further ground of defense, that Mr. Webb agreed to supply, out of his own estate, the means for the education of Mrs. Webb's children ; and that he failed to do so. This is affirmative matter, not responsive to any allegation in the bill; and the *onus* of proving its truth was on the defendant. The averment is not proved.—Hanson v. Patterson, 17 Ala. 738 ; Royall v. McKenzie, 25 Ala. 363 ; Walker v. Palmer, 24 Ala. 358 ; Carroll v. Malone, 28 Ala. 521 ; Grier v. Campbell, 21 Ala. 327.

There is no error in the record, and the decree of the chancellor is affirmed, at the cost of the appellant.