# McMillan *v.* Craft.

### *Bill in Equity to foreclose Deed of Trust.*

1. *Conflict in recitations of deed; granting clause must prevail.*
   Where there is a repugnant conflict between the introductory recitals in a deed and the granting clause, the latter must prevail, since the granting clause determines the interest intended to be conveyed.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. THOMAS H. SMITH.

Marie V. Craft, the appellee in this case, filed her bill of complaint on the 16th day of June, 1900, against T. D. McMillan, the appellant, praying the foreclosure of two certain deeds of trust made by Alcide P. Guesnard to the Southern Building & Loan Association—one of said deeds of trust being for the sum of $2,000 and the other being for the sum of $500. The bill averred that Guesnard was dead; that complainant had purchased the interest of said Southern Building & Loan Association in and to said deeds of trust; and that appellee, T. D. McMillan, had purchased the property described in said deeds of trust under a decree of the probate court, which decree of the probate court was for the sale of the property for the support and maintenance of two minor children of said Guesnard. The bill also averred that there was due under said deeds of trust the sum of $878.89, which was paid to said association in the following manner: John Craft, the husband of complainant, held a certificate of stock in said Southern Building & Loan Association of the cash surrender value of $761.61, which he surrendered to said association and paid in addition thereto in cash, the sum of $117.28, and complainant received from said association a transfer of the association's interest in said property, which said transfer is attached as exhibit "E" to the bill of complaint.

The answer of McMillan denies that there was due under said mortgage or deeds of trust the sum of $878.89, but, on the contrary, the answer averred that there was only due the sum of $117.28, at the time of the transfer of the association's interest in said property to the complainant. The answer contains a plea of tender of said sum of $117.28 and interest thereon from the date of said transfer, making a total of $128.85, which sum was paid into the registry of the court at the time of the filing of the answer.

It was admitted that respondent McMillan tendered to the defendant before the bringing of the suit the said sum of $128.85 in payment of the amount due under said two deeds of trust.

The chancellor decreed that there was due to complainant the said sum of $878.89 and interest thereon, and ordered that unless said sum be paid by respondent within thirty days from the date of the decree the register of the court will proceed to sell the property described in the two deeds of trust. From this decree respondent appeals, and assigns the rendition thereof as error.

BESTOR, GRAY & BESTOR, for appellant, cited 18 Am. & Eng. Ency. Law, 160, 161; 24 Am. & Eng. Ency. Law, 281.

GREGORY L. & H. T. SMITH, *contra.*—When there is a conflict between the recitations of a deed and its granting clause, the latter must prevail.—*Webb v. Webb,* 29 Ala. 606.

It is claimed, however, that McMillan had a right to rely upon the recitations of the transfer, and that as to him the true transaction cannot be shown by parol. The vice in the contention arises out of the fact that McMillan does not claim to be a *bona fide* purchaser; before that defense can be set up it must be pleaded as well as proven.—*Craft v. Russell,* 67 Ala. 9; *Hooper v. Strahan,* 71 Ala. 75; *May v. Wilkinson,* 76 Ala. 543.

Recitals in an instrument as to its considerations are not conclusive upon the parties as to their truth even

when the rights of the third person depend upon them. The common case of a vendor seeking to enforce his lien for the purchase money although his deed recited that such purchase money had been paid in full, is a familiar instance of the rule.—*Jenkins v. Mathews,* 80 Ala. 486; *Hamaker v. Coons,* 117 Ala. 610; *Agnew v. McGill,* 96 Ala. 500.

DOWDELL, J.—The main question in this case is the amount of balance due on the bonds for which the deeds of trust sought to be foreclosed were given. The respondent in his answer denies that there is a balance of eight hundred and seventy-eight and 89-100 dollars, the amount claimed by the complainant, but admits a balance of one hundred and seventeen and 28-100 dollars due with interest, and by plea incorporated in the answer makes a tender of this amount. The respondent rests his contention on a construction of exhibit "E" to complainant's bill, which is a quitclaim conveyance by the mortgagee to the complainant, and the circumstances attending this transaction as shown by the correspondence between the parties to the same. It is not disputed but that after applying as a payment on the original indebtedness secured by the mortgaged deed, the cash surrender value of the certificates of stock of the mortgagor, A. P. Guesnard, deceased, which were held by the mortgagee as collateral security on the loan debt, there remained a balance due of eight hundred and seventy-eight and 89-100 dollars. The contention of the respondent, however, is that by the recitals of the quitclaim conveyance, it is shown that the amount of the original loan debt was still further reduced by a voluntary payment made on the same in the application by the mortgagee, Building & Loan Association, to said indebtedness of the cash surrender value of a certificate of stock in said B. & L. Association, owned and held by John Craft, the husband of the grantee in the quitclaim deed, who negotiated the transaction with the B. & L.

Association, and directed the transfer of the interest of the B. & L. Association to be made to his wife, the complainant.

Among other recitals in this deed coming before the granting clause, the one referring to the certificate of John Craft is as follows: "And, whereas, John Craft has filed his application for the withdrawal of certificate No. 5881 of the value of seven hundred and sixty-one and 61-100 ($761.61) dollars, which he desires applied also as a partial payment on said indebtedness of the said Alcide P. Guesnard, leaving due to said association the sum of one hundred and seventeen and 28-100 ($117.28) dollars; And, whereas, the said John Craft requests that a release and quitclaim of the interests of said association be made to M. V. Craft." Following this recital is the granting clause in the said conveyance, to-wit: "Now, therefore, The Southern Building & Loan Association, a corporation as aforesaid, and C. L. Nolen as substituted trustee, for and in consideration of the cancellation of said certificates as herein recited and in consideration of the sum of one hundred and seventeen and 28-100 ($117.28) dollars in hand paid, hereby give, grant, bargain, sell and convey and by these presents release, relinquish, and quitclaim their entire right, title and interest unto the said M. V. Craft in and to the following described lots or parcels of land," etc. The other certificates than that of John Craft referred to in the above granting clause, were the certificates of stock owned by said A. P. Guesnard, deceased, in said association, and which had been pledged by him with said association as security on his said indebtedness to it.

The withdrawal value of these certificates, upon the cancellation of the same, the association had a right to apply, and it was its duty to apply, on the mortgage indebtedness of A. P. Guesnard, in the absence of any agreement to the contrary. But such was not the case as to the withdrawal value of the certificate of stock of John Craft. He was a stranger to the mortgage indebtedness, and the withdrawal value of his stock could not be applied as payment on said indebtedness except by

his express direction. A voluntary payment by him would in effect be nothing more nor less than a gift, and to constitute it such, it ought to be clear and unequivocal.

When we take into consideration the difference in contractual relations between the association and John Craft, and that of A. P. Guesnard, deceased, we do not think it proper to look to the recitals in the deed concerning the disposition to be made of the withdrawal value of the certificates of the mortgagor, to determine whether or not it was intended by John Craft and the association that the withdrawal value of his stock should be applied as payment on said mortgage indebtedness and that it was so applied. Moreover, the language used in the two recitals is not the same. In the recital referring to the surrender and cancellation of the mortgagor's certificates of stock, the language is, "requesting the withdrawal value thereof to be applied as a partial payment upon said indebtedness so secured by the two deeds of trust aforesaid," while in the recital referring to the Craft stock, the language is, "which he desires applied," etc. There is clearly a repugnancy in reference to the certificate of John Craft between the *recital* in the deed, and its granting clause. In the former there is expressed a *desire* that the withdrawal value of the Craft certificate be applied as a partial payment, while in the latter—the granting clause—the cancellation of said certificate is expressed as a *consideration* for the conveyance. Manifestly, if the withdrawal value of the certificate was intended to be applied, and if it was in fact applied, as a partial payment on the mortgage indebtedness, then it could not be a consideration for the conveyance.

Where there is a conflict between the recitation in a deed and its granting clause, the latter must prevail. *Webb v. Webb*, 29 Ala. 606, where it said: "There is a repugnance between the introductory recitals in the deed and the granting clause. The bill alleges that the

recital is a mistake, and that the granting clause correctly expresses the interest intended to be conveyed. The answer admits the truth of this averment. Under this state of facts, we would, if necessary, correct the ante-nuptial agreement. The general rule is admitted, that parties are estopped from denying the facts recited in their deeds. Neither will they be permitted, in a court of law, to prove a consideration different from that expressed, so as to change the character of the instrument.—*Murphy v. Branch Bank of Mobile,* 16 Ala. 90; *Eckles & Brown v. Carter,* 26 Ala. 563. In the present case, the deed furnishes its own correction. *The granting clause determines the interest intended to be conveyed, and prevails over the introductory statement. Kershaw v. Boykin,* 1 Brevard, 301. This is not intended to disturb the well-settled rule that if two clauses in a deed are so repugnant that they cannot stand together, the first prevails over the last." (The italics are ours.)

We think the evidence in the case clearly shows that eight hundred and seventy-eight and 89-100 ($878.89) dollars was the amount of the interest in the property intended to be conveyed by the quitclaim deed. This is shown by the letter of the association of October 26th, 1898, the same date of the execution of the deed, to Z. M. P. Inge, the association's agent at Mobile, Ala., through whom it was transacting this business with John Craft. In this letter the association incloses the original bonds or notes and the mortgages showing the balance due on the same to be $878.89, and stating that this is the amount of the interest transferred by its quitclaim deed to M. V. Craft. The notes and mortgages were not formally indorsed, but this letter contained instructions to Inge, the agent, to indorse the same in the association's name, if he thought this should be done. The delivery of these notes and mortgages under the circumstances was sufficient to transfer the debt and the security without a formal indorsement, though they were, however, subsequently and before the commencement of this suit indorsed by the association.

We concur with the chancellor in his conclusion, and his decree will be affirmed.